UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

)
FEDERAL TRADE COMMISSION )
and CONSUMER FINANCIAL )
PROTECTION BUREAU, )
)
    Plaintiffs, )           Civil Action No. 15-2064
)
    v. )
)
GREEN TREE SERVICING LLC, )
)
    Defendant. )

_____

## COMPLAINT FOR PERMANENT
## INJUNCTION AND OTHER RELIEF

Plaintiffs, the Federal Trade Commission ("FTC") and the Consumer Financial

Protection Bureau ("CFPB"), allege:

1.    The FTC brings this action under Sections 5(a) and 13(b) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b); the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; and the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, to obtain permanent injunctive

relief, restitution, disgorgement, and other equitable relief for violations of the FDCPA,

Section 5 of the FTC Act, and the FCRA by Green Tree Servicing LLC ("Green Tree").

2.    The CFPB brings this action under Sections 1031(a), 1036(a)(1), and 1054

of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a),

5536(a)(1), and 5564; the FDCPA, 15 U.S.C. §§ 1692-1692p; the FCRA, 15 U.S.C. §§

1681-1681x; and Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), 12

U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R. part 1024, to

obtain permanent injunctive relief, restitution, disgorgement, civil money penalties, and

other relief for violations of the CFPA, FDCPA, FCRA, and RESPA by Green Tree.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331,

1337(a), and 1345; under 15 U.S.C. §§ 45(a)(1) and 53(b) with respect to FTC Act

claims; under 12 U.S.C. § 5565(a)(1) with respect to CFPA claims; under 15 U.S.C. §

1692*l* with respect to FDCPA claims; under 15 U.S.C. § 1681s with respect to FCRA

claims; and under 12 U.S.C. § 2614 with respect to RESPA claims.

4.      Venue is proper in the United States District Court for the District of

Minnesota because Green Tree is located in and does business in this District, 28 U.S.C.

§§ 1391(b) and (c), 15 U.S.C. § 53(b), and 12 U.S.C. § 5564(f).

## PARTIES

5.      Plaintiff FTC is an independent agency of the United States Government

given statutory authority and responsibility by the FTC Act, *as amended*, 15 U.S.C. §§

41-58.

6.      The FTC is authorized to initiate federal district court proceedings, by its

own attorneys, to address violations of any provision of law enforced by the FTC.  15

U.S.C. § 53(b).  The FTC is charged, *inter alia*, with enforcing Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or

affecting commerce; the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits abusive,

2

deceptive, and unfair debt collection practices; and the FCRA, 15 U.S.C. § 1681-1681x, which imposes duties upon consumer reporting agencies and those who furnish information to a consumer reporting agency or use information obtained from a consumer reporting agency.

7.      Plaintiff CFPB is an independent agency of the United States Government charged with regulating the offering and provision of consumer financial products or services under Federal consumer financial laws.  12 U.S.C. § 5491(a).

8.      The CFPB is authorized to initiate federal district court proceedings, by its own attorneys, to address violations of Federal consumer financial law, including the CFPA, the FDCPA, the FCRA, and RESPA.  12 U.S.C. § 5564(a)-(b).  Sections 1031 and 1036(a) of the CFPA, 12 U.S.C. §§ 5531 and 5536(a), prohibit unfair, deceptive, or abusive acts or practices, or other violations of Federal consumer financial law, by any covered person or service provider.

9.      The Defendant, Green Tree, is a Delaware limited liability company, with its principal place of business in St. Paul, Minnesota.  At all times material to this Complaint, Green Tree has transacted business in this District and throughout the United States, and has engaged in the business of servicing and collecting payments on residential mortgage loans.

## COMMERCE

10.      At all times material to this Complaint, Green Tree has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3

## GREEN TREE'S BUSINESS PRACTICES

11.     Green Tree is a mortgage servicing company.  Green Tree contracts with the mortgage lenders who initially extend mortgages to consumers.  As the servicer, Green Tree is then responsible for, among other things, creating and sending monthly statements to borrowers, collecting payments, processing payments, ensuring that the mortgaged property is insured, and processing property tax payments.  The company markets itself to lenders as a high-touch servicer and collector.

12.     Green Tree has used extremely aggressive collection tactics in its rapidly growing servicing business.  Consumers are especially vulnerable to Green Tree's tactics because they are locked into a relationship with the company; in order to remain in their homes, consumers must deal with the company for as long as it services their loans, regardless of how they are treated by Green Tree or the company's employees.

### Green Tree's Loan Servicing and Collection Practices

13.     Green Tree is a prominent servicer of "credit-sensitive" residential mortgage and manufactured-housing loans.  Before 2008, Green Tree's operations primarily consisted of originating and servicing loans for manufactured housing.  During the past five years, while Green Tree has continued to service manufactured-housing loans, it has shifted its focus to servicing residential loans, and it has acquired servicing rights to large portfolios of such loans.

14.     In recent years, Green Tree has expanded the portfolio of loans that it services at a rapid pace.  At the end of 2012, Green Tree serviced roughly 900,000 residential mortgage loans, with an unpaid principal balance of approximately $74

4

billion.  Subsequently, in January 2013, Green Tree acquired servicing rights for 350,000

Fannie Mae loans previously serviced by Residential Capital, LLC.  Also in January

2013, Green Tree acquired mortgage-servicing rights for 650,000 Fannie Mae loans from

Bank of America.

15.     Green Tree's servicing portfolio includes a substantial number of

mortgages for which consumers have difficulty making payments.   Many of the loans

that Green Tree services were in default at the time that Green Tree acquired them, and

the overall delinquency rate for Green Tree loans is high compared to rates for other

servicers.  The overall delinquency rate for Green Tree's first lien third-party servicing

portfolio at the end of 2012 was 15.68%.

16.     In its efforts to acquire more servicing business, Green Tree has marketed

itself as a "high-touch servicer," meaning that it places collection calls to consumers

frequently in an effort to get them to make timely payments on their loans.  It also has

used "behavioral risk scoring," which analyzes consumers' delinquency and payment

history, to predict the likelihood that consumers will default on their loans and to

determine when and how often to call consumers.

17.     Since at least 2008, Green Tree's collections department has been charged

with communicating with consumers who have missed their payment due date by at least

one day, have not paid before a late fee has been assessed, or are already in default on

their mortgage.  Green Tree's collections department separates collectors into "front-end"

and "back-end" collectors.  Front-end collectors call consumers who are between one and

twenty-nine days late with their mortgage payments.  Back-end collectors generally call

consumers who are thirty or more days late in making their payments.  Back-end collectors typically call consumers more frequently and exert more pressure on consumers than front-end collectors.

18.     Although consumers do not have contact with back-end collectors unless and until they are late on their loans, Green Tree assigns every consumer a back-end collector (which Green Tree also calls a "single point of contact" or "SPOC") as soon as Green Tree acquires the servicing rights to the consumer's loan.  Once consumers are thirty days late on their loans (and sometimes earlier if Green Tree decides that an aggressive approach is needed), a consumer interfaces with Green Tree mainly, if not exclusively, through the assigned back-end collector.

19.     Consumers receive many collection calls from their assigned back-end collector.  In addition, whenever consumers who are delinquent by 30 days or more call Green Tree's 800 number with questions – including questions about their account status, fees, loss mitigation options, or escrow accounts – they are routed automatically to their assigned back-end collector, or to another available back-end collector if their assigned collector is unavailable.

20.     As a result of Green Tree's routing system for handling incoming calls, consumers  have often been routed to a collector instead of a customer service representative.  Indeed, many consumers' only option is to speak with collectors when they have questions or problems with their accounts.  Even consumers who have reached customer service representatives have often first been asked to schedule a payment before receiving assistance if they are behind on their mortgage payments.

**Green Tree's Loss Mitigation Activities**

21.     Through Green Tree, consumers who are having difficulty paying their
mortgages can seek loss mitigation assistance, which includes loan modifications,
deferrals, extensions, and forbearances.  Consumers may also arrange a short sale of their
house as long as they obtain approval.  As a mortgage servicer, Green Tree has the
delegated authority from the investors that own the loans to approve short sale requests in
some instances.  In other cases, Green Tree must seek approval from the investors before
a short sale can proceed.

22.     Primary responsibility for guiding consumers through the loss mitigation
process rests with Green Tree's back-end collectors.  The back-end collector assigned to
the consumer's account is responsible for sending the consumer application materials,
contacting the consumer about any missing documents, and otherwise interacting with the
consumer throughout the loss mitigation evaluation process.

23.     Green Tree has not always informed consumers that those tasked with
providing assistance are back-end collectors.  Rather, Green Tree has represented in
correspondence to consumers that "customer service" and "account representatives" will
assist consumers with loss mitigation options, questions about pending loan modification
applications, missing loan modification application documents, and questions about debt
validation notices involving delinquencies.

24.     But Green Tree's compensation structure has not incentivized back-end
collectors to work on loan modifications.  The company's performance evaluations and
compensation plans have not rewarded back-end collectors for work on loan

modifications.  Instead, a back-end collector's primary responsibility has been to handle

collection work for the consumer's account if it is more than 30 days delinquent.

25.     Green Tree participates in the Making Home Affordable ("MHA")

program, which was launched by the United States Department of the Treasury in

February of 2009.  The MHA program was designed to help eligible homeowners

refinance or modify their loans to obtain affordable payments.   The Home Affordable

Modification Program ("HAMP"), which is part of the MHA program, allows

participating mortgage servicers to provide loan modifications under certain terms

proscribed by the program in exchange for incentive payments.

26.     As a participating mortgage servicer, Green Tree offers loan modifications

to consumers under HAMP.  Consumers may be eligible for HAMP modifications if they

have a financial hardship, are behind on their payments, or default is reasonably

foreseeable.  Consumers may also be eligible for proprietary modifications offered by the

investors who own their mortgage loans.  The guidelines for proprietary modifications

are set by these groups of investors.

27.     HAMP focuses on affordable and sustainable modifications.  HAMP also

provides consumers and the investors who own the consumers' mortgages financial

incentives for successful participation.  Additional consumer benefits under HAMP

modifications include waiver of late fees and a prohibition on modification fees.

Proprietary modifications vary and may not provide similar benefits.

28.     The HAMP guidelines prohibit a servicer from requiring a consumer to

make any "good faith" payment or up-front cash contribution to be considered for a

HAMP modification.  Consumers who are unable to make a payment may, in fact, be considered for a loan modification or otherwise be evaluated for potential loss mitigation options.

29.     In numerous instances, however, Green Tree's back-end collectors have represented to consumers that they must make a loan payment before they can be considered for a loan modification.

30.     Another loss mitigation option that consumers might explore is a short sale. When a consumer sells a home in a short sale, the proceeds obtained typically fall short of the mortgage balance.  The investor group that owns the consumer's mortgage must agree to the short sale, since it typically means they will release their claims on the property for less than the amount they are owed.  As the investors' agent, Green Tree either makes the short sale decision if it has authority to do so or facilitates the communication between the investors and consumer if it cannot approve or deny a short sale request itself.

31.     In numerous instances, the investors who own consumers' mortgages have an incentive to agree to short sales because the amount they are paid – even if less than the amount owed – is greater than what they would typically recover if the property went into foreclosure.  By agreeing to a short sale, they also avoid the fees and costs associated with a foreclosure action.

32.     In relation to foreclosure, short sales also can be advantageous to consumers.  Although a short sale still will negatively impact a consumer's credit, the impact is generally less severe than that of a foreclosure.  In addition, short sales are

usually easier to plan for, as opposed to the unpredictable and frequently lengthy foreclosure process, and typically result in a waiver of deficiency amounts.

33.     Some of the loans Green Tree services are owned by participants in the Home Affordable Foreclosure Alternative ("HAFA") program, which is part of the MHA program.  HAFA requires short sale requests to be reviewed within 30-45 days depending on the owner of the loan.  Green Tree also services loans for investors that do not participate in HAFA.  These loans often have their own short sale requirements that Green Tree must follow.

34.     In response to consumer requests for approval of a short sale, Green Tree has represented to consumers in numerous instances that it would review and respond to the request within a set time period, e.g., within 30 days.

35.     In numerous instances, however, consumers' requests to Green Tree for approval of a short sale have met with significant delays.  Green Tree's short sale department frequently has been unreachable and nonresponsive.  Despite multiple calls to the short sale negotiators, consumers and those working on their behalf have not received return calls.  Negotiator voice mailboxes often have been full and would not accept messages.  In numerous instances, Green Tree has taken two to six months to respond to consumers' short sale requests.

36.     In numerous instances, as a result of these misrepresentations, consumers have lost potential buyers who were not expecting to wait months to complete the sale.  They also may have forgone other loss mitigation alternatives while their short sale requests were pending and ultimately faced foreclosures they could have avoided.

**Green Tree's Failure to Recognize Consumers' "In-Process" Modifications**

37.     After Green Tree acquires servicing rights to a portfolio of loans, it gathers certain information about those loans from the prior servicer.  The data gathered is commonly referred to as the "standard servicing data extract."  Detailed loss mitigation data is not part of the standard servicing data extract that Green Tree acquires from prior servicers.  In many instances, the loss mitigation data acquired by Green Tree has been incomplete or inaccurate.

38.     To obtain a permanent HAMP modification, consumers are required to first enter into a trial period plan ("TPP") with the servicer.  HAMP TPPs generally entitle the consumer to a permanent modification so long as the consumer makes all trial payments.  Proprietary modifications may also have trial period plans that typically result in permanent modifications upon successful completion of all payments.

39.     Many mortgages Green Tree acquires from other servicers have "In-Process Loan Modifications" in place at the time of acquisition.  Some of these modifications are trial modifications, including HAMP TPPs, in which the prior servicer agreed to modify the loan payment terms and, in many cases, the consumer began to make the modified monthly payments.  Others involve consumers who have completed making the trial payments by the time their loans were transferred to Green Tree but whose permanent modification was not input into the prior servicer's system before the transfer.

40.     In many instances, the loss mitigation data Green Tree has acquired regarding these In-Process Modifications has been incomplete or inaccurate.  Green Tree employees assigned to work on the acquisition are responsible for requesting specific

data such as the trial payment history and modification documents, but in numerous instances, there has been no process in place to confirm that this data has in fact been requested or received.

41.     In numerous instances, Green Tree has learned about In-Process Modifications from consumers during Green Tree's initial "Welcome Call" or subsequent collection calls.  Green Tree would not honor an In-Process Modification, however, without conducting its own "validation."

42.     As part of its validation process, Green Tree has asked the consumer or the prior servicer to provide a copy of the consumer's modification paperwork.

43.     In numerous instances, if Green Tree has learned of an In-Process Modification from a consumer, but the information provided by the consumer does not match the account information provided by the prior servicer, it has not honored the In-Process Modification.   In numerous instances, even if Green Tree subsequently has obtained evidence from the prior servicer of an In-Process Modification, it still has not honored the In-Process Modification.

44.     When Green Tree has not honored a consumer's In-Process Modification, in numerous instances, the consumer has had to resubmit a loan modification application and Green Tree has conducted its own assessment of the consumer's eligibility for a loan modification.  Green Tree has conducted this assessment for proprietary and HAMP modifications alike.

45.     But, in numerous instances, Green Tree's validation process has delayed recognition of a consumer's In-Process Modification for months, if it is even ultimately

12

recognized at all.  Green Tree has required many consumers to be re-evaluated for a modification and to resubmit documents several months after beginning or completing their initial trial modification.  Consumers also have continued to receive collection calls while their In-Process Modification is being resolved.  And Green Tree has continued to seek payments from these consumers under the original, unmodified mortgage loan, and has continued with its foreclosure timeline if consumers do not make payments.

46.    In numerous instances, Green Tree has received written inquiries from consumers regarding errors in their accounts related to their In-Process Modifications, including the monthly payment amount, interest rate, and delinquency status.

47.    In numerous instances, Green Tree has failed to recognize such inquiries as "qualified written requests" subject to RESPA and has failed to acknowledge receipt within 20 days and to respond to consumers about account errors within 60 days by either correcting erroneous account information or explaining why the account information is not in error.

48.    In numerous instances, Green Tree has furnished adverse information regarding payments that were the subject of qualified written requests to consumer reporting agencies during the 60 day period following receipt.

**Green Tree's False or Unsubstantiated Claims**

49.    A large number of loans Green Tree acquired from other servicers have contained inaccurate data regarding the status of the loan, fees owed, and corporate advances.

13

50.     As described above, a large number of loans acquired from other servicers have contained inaccurate or incomplete data regarding the consumers' in-process loan modifications.

51.     In some instances, Green Tree knew or had reason to believe that specific portfolios of loans contained unreliable or missing data about the consumers' loans.

52.     In many instances, consumers have disputed or attempted to dispute the amounts that Green Tree claims the consumers owe or other aspects of the loan terms.  In many of these instances, Green Tree has refused to consider the disputes.

53.     In many instances in which consumers have disputed the amounts that Green Tree claims they owe, Green Tree eventually has admitted that the consumers do not owe the amounts initially claimed.

54.     In many instances, Green Tree has made false representations about the amounts consumers owe or the terms of their loans.  For the reasons described above in paragraphs 49-53, in many instances, Green Tree knew or should have known that the amounts it claimed consumers owed or the loan terms it imposed upon consumers were inaccurate.

**Green Tree's Unlawful Collection Practices**

55.     From its offices in St. Paul, Minnesota, Tempe, Arizona, Fort Worth, Texas, and Rapid City, South Dakota, and from several smaller regional offices, Green Tree engages in debt collection activities throughout the United States.  Green Tree regularly attempts to collect debts by placing telephone calls to consumers.

56.     Green Tree's collection activities are governed by Section 5 of the FTC Act and Sections 1031 and 1036(a)(1)(B) of the CFPA, both of which prohibit unfair or deceptive acts or practices.  For mortgages in default at the time Green Tree acquired them, Green Tree is a debt collector as defined by the FDCPA and its collection activities are covered by the FDCPA, in addition to the FTC Act and the CFPA.

57.     In numerous instances in which the debt was already in default at the time Green Tree acquired it, Green Tree has called third parties more than once to obtain location information for consumers, even though: (i) the third parties have not requested additional calls, and (ii) Green Tree had no reason to believe that the information originally obtained from the third parties was inaccurate or incomplete.

58.     In numerous instances, Green Tree has revealed debts to consumers' employers and co-workers.  Such disclosures can adversely affect consumers' employment situations, including, among other things, job retention, promotions, compensation, or job assignments.

59.     In numerous instances in which the debt was already in default at the time Green Tree acquired it, Green Tree has revealed debts to third parties, such as family members, employers, co-workers, tenants, and neighbors of consumers.  Sometimes, Green Tree has encouraged third parties to tell the consumers to get in touch with Green Tree and set up a payment, or has encouraged the third parties to help consumers make payments.

60.     In numerous instances in which the debt was already in default at the time Green Tree acquired it, Green Tree has called consumers at unusual times or places, or

times or places which it knew or should have known to be inconvenient to the consumers. For example, Green Tree has called: (i) early in the morning, such as at 5:00 a.m., or late at night, such as at 11:00 p.m.; and (ii) at times or places that consumers have informed Green Tree are inconvenient.

61.     In numerous instances, Green Tree has called consumers at work, even though the consumers have previously informed Green Tree that the consumers' employers prohibit them from receiving personal telephone calls at work.  In some instances, consumers have been disciplined at work due to the impermissible calls.

62.     In numerous instances in which the debt was already in default at the time Green Tree acquired it, Green Tree has used obscene, profane, or abusive language in its collection calls, such as calling consumers "deadbeats" or "worthless," telling them "you should leave your husband if he can't provide for you" or to "get a real job," mocking consumers' illnesses or other struggles, and yelling and cursing at consumers.

63.     In numerous instances in which the debt was already in default at the time Green Tree acquired it, Green Tree has called consumers repeatedly with the intent to annoy, harass, or abuse.  For example, Green Tree collectors frequently have: (i) called consumers between seven and twenty times per day, every day, week after week; (ii) called consumers again despite having already spoken to the consumers earlier that day; (iii) called consumers again as soon as a call is terminated; and (iv) left multiple voicemail messages for consumers in the same day.

64.     In numerous instances, Green Tree has represented that nonpayment of consumers' mortgages will result in their arrest or imprisonment, or the seizure,

garnishment, attachment, or sale of property or wages, when in fact such action is not

lawful or Green Tree does not intend to take such action.  Green Tree often has

represented that it will foreclose upon consumers' homes if consumers do not make their

payments over the phone immediately.  In fact, Green Tree often has made such

representations even though (a) it was long before it was lawful to initiate foreclosure

proceedings; (b) the company lacks authority to arrest or imprison consumers, or (c) it is

not company policy to seek a garnishment of consumers' wages.

### Green Tree's Representations Regarding
### Payments and Use of Unauthorized Withdrawals

65.    In numerous instances, Green Tree has pressured consumers to make

payments using Speedpay, a payment method that charges consumers a $12 convenience

fee per transaction.  Green Tree often has represented to consumers, either expressly or

by implication, that Speedpay is the only available payment method, or that consumers

must use Speedpay in order to avoid incurring a late fee.  In fact, Green Tree accepts

several other payment methods, some of which do not charge consumers a convenience

fee.  For example, Green Tree accepts checks and ACH payments without assessing

consumers a convenience fee.  In many instances, consumers could have used these other

payment methods to make timely payments and avoid a late fee.

66.    In numerous instances, Green Tree has taken payments from consumers'

bank accounts without the consumers' authorization.  For example, consumers who

provide their bank account information to Green Tree to set up one payment through

Speedpay have later discovered that the company used their account information to set up additional, unauthorized payments.

67.     In numerous instances, Green Tree has represented that consumers do not have a "grace period" after the due date on their loans, during which they would be able to make a payment without incurring a late fee.  In fact, consumers' promissory notes do recognize a period between the due date and the date on which a late fee is assessed.  In other words, the notes contain a "grace period."  In part due to Green Tree's misrepresentations regarding the grace period, many consumers have used expedited payment methods that charge a convenience fee, under the belief that such methods are the only way to make timely payments without a grace period.

### Green Tree's Inaccurate Reporting to Credit Bureaus

68.     In numerous instances, Green Tree has furnished consumers' credit information to consumer reporting agencies when it knew, or had reasonable cause to believe, that the information was inaccurate.  Similarly, in numerous instances, Green Tree has failed to correct information that it furnished to a consumer reporting agency once it determined that the information furnished was not complete or accurate.  In many of these instances, consumers have informed Green Tree that it reported incorrect information to the consumer reporting agencies, yet it failed to correct the information.

### Green Tree's Problems with Handling Escrow Accounts

69.     As part of its work as a mortgage servicer, Green Tree administers consumers' escrow accounts.  For consumers whose loans include escrow accounts, Green Tree calculates the annual amount necessary to cover required property tax and

insurance payments, as applicable, divides that sum into 12 installments, and includes the resulting amount in consumers' required monthly payment.  Green Tree generally also includes an additional amount as a "cushion" to prevent a shortfall in the escrow account. Cushions, if properly calculated, are permissible under RESPA.

70.     When Green Tree receives payments from consumers with escrow accounts, it disburses the principal and interest portion of the payment to the appropriate entity.  The remaining amount is held in a segregated account to be disbursed to the appropriate taxing authority or insurance company when their tax and insurance payments come due.

71.     In numerous instances, however, Green Tree has failed to timely pay property taxes for consumers.  Green Tree's failure to make timely tax payments has jeopardized consumers' continued home ownership and, in some instances, also has caused consumers' names to be listed in local publications on the delinquent tax rolls.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT AND THE CFPA

72.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

73.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

74.     Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531 and

5536(a)(1)(B), prohibit covered persons from engaging "in any unfair, deceptive, or

abusive act or practice."  Acts or practices are unfair under the CFPA if "the act or

practice causes or is likely to cause substantial injury to consumers which is not

reasonably avoidable by consumers" and "such substantial injury is not outweighed by

countervailing benefits to consumers or competition."  12 U.S.C. § 5531(c).

75.     Green Tree is a "covered person" within the meaning of the CFPA,

12 U.S.C. §§ 5481(6).

### Deceptive Acts and Practices Regarding Account Terms and Status

76.     In numerous instances in the course of servicing mortgage loans and

collecting debts from consumers, Green Tree has represented to consumers, directly or

indirectly, expressly or by implication, that the consumers' mortgage loans have certain

unpaid balances, payment due dates, interest rates, monthly payment amounts,

delinquency statuses, and unpaid fees or other amounts due.

77.     In truth and in fact, in numerous instances the material representations set

forth in Paragraph 76 were false or were not substantiated at the time the representations

were made, including but not limited to representations made where:

a.      Green Tree had knowledge or reason to believe that a specific

portfolio contained unreliable data but failed to obtain information substantiating

the accuracy of the data prior to collecting;

b.      Green Tree had knowledge or reason to believe that a consumer had

an In-Process Loan Modification with the prior servicer of the loan but continued

to seek to collect payments from the consumer under the original, unmodified

mortgage loan terms; or

c.      Consumers disputed or attempted to dispute the validity or accuracy

of the amount of debt and Green Tree failed to review information substantiating

the amount of debt, or failed to consider the consumers' disputes, prior to

continuing collection.

## Count I by Plaintiff FTC

78.     Green Tree's representations as set forth in Paragraph 76 are false or

misleading and constitute a deceptive act or practice in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).

## Count II by Plaintiff CFPB

79.     Green Tree's representations as set forth in Paragraph 76 are false or

misleading and constitute a deceptive act or practice in violation of the CFPA,

12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

## Deceptive Acts and Practices Regarding the Requirements
## for Loan Modification Consideration

80.     In numerous instances, in connection with servicing mortgage loans, Green

Tree employees have represented, directly or indirectly, expressly or by implication, that

consumers have to make a payment on their loans before Green Tree would consider

them for a loan modification.

81.     In truth and in fact, in numerous instances, consumers did not need to make

payments on their loans before they could be considered for a loan modification.  For

example, the Home Affordable Modification Program ("HAMP"), in which Green Tree

participates, does not allow participating servicers to require consumers to make

payments before considering them for a loan modification.

### Count III by Plaintiff FTC

82.     Green Tree's representations as set forth in Paragraph 80 are false or

misleading and constitute a deceptive act or practice in violation of Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a).

### Count IV by Plaintiff CFPB

83.     Green Tree's representations as set forth in Paragraph 80 are false or

misleading and constitute a deceptive act or practice in violation of the CFPA,

12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

### Deceptive Acts and Practices Regarding Reviewing
### and Responding to Short Sale Requests

84.     In numerous instances, in connection with servicing mortgage loans, Green

Tree has represented to consumers, directly or indirectly, expressly or by implication, that

it will review and respond to consumers' requests to be considered for a short sale within

a set time period (e.g. within 30 days).

85.     In truth and in fact, in numerous instances, Green Tree failed to review and

respond to consumers' requests to be considered for a short sale in a timely manner (e.g.,

within 30 days).

## Count V by Plaintiff FTC

86.     Green Tree's representations as set forth in Paragraph 84 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count VI by Plaintiff CFPB

87.     Green Tree's representations as set forth in Paragraph 84 are false or misleading and constitute a deceptive act or practice in violation of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

## Deceptive Acts and Practices Regarding Payment Collection Threats

88.     In numerous instances in the course of servicing mortgage loans and collecting debts from consumers, Green Tree has represented to consumers, directly or indirectly, expressly or by implication, that nonpayment of their mortgage loan will result in the arrest or imprisonment of consumers or the seizure, garnishment, attachment, or sale of the consumers' property or wages.

89.     In truth and in fact, in numerous instances, nonpayment of a mortgage loan would not have resulted in a consumer's arrest or imprisonment, or seizure, garnishment, or attachment of a consumer's property or wages.

## Count VII by Plaintiff FTC

90.     Green Tree's representations as set forth in Paragraph 88 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count VIII by Plaintiff CFPB**

91.     Green Tree's representations as set forth in Paragraph 88 are false or misleading and constitute a deceptive act or practice in violation of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

**Deceptive Acts and Practices Regarding Available Payment Methods**

92.     In numerous instances in the course of servicing mortgage loans and collecting debts from consumers, Green Tree has represented, directly or indirectly, expressly or by implication, that a payment method that entails a convenience fee is the only payment method available or the only payment method that consumers can use to make timely payments.

93.     In truth and in fact, in numerous instances, a payment method that entails a convenience fee was not the only payment method available or the only payment method that consumers can use to make timely payments.

**Count IX by Plaintiff FTC**

94.     Green Tree's representations as set forth in Paragraph 92 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count X by Plaintiff CFPB**

95.     Green Tree's representations as set forth in Paragraph 92 are false or misleading and constitute a deceptive act or practice in violation of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

## **Unfair Acts and Practices Regarding Unauthorized Withdrawals**

96.     In numerous instances in the course of servicing mortgage loans and collecting debts from consumers, Green Tree has caused consumers' bank accounts to be debited without having previously obtained consumers' consent.

97.     Green Tree's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

## **Count XI by Plaintiff FTC**

98.     Green Tree's practices as described in Paragraph 96 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## **Count XII by Plaintiff CFPB**

99.     Green Tree's practices as described in Paragraph 96 constitute unfair acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531(a) and (c)(1), and 12 U.S.C. § 5536(a)(1)(B).

## **Unfair Acts and Practices Regarding In-Process Loan Modifications**

100.    In numerous instances, in connection with servicing mortgage loans, Green Tree has unilaterally breached contracts that consumers negotiated with the prior servicers of their loans by not honoring In-Process Loan Modifications that consumers had obtained from their prior servicers.

101.    Green Tree's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

25

**Count XIII by Plaintiff FTC**

102.    Green Tree's practices as described in Paragraph 100 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**Count XIV by Plaintiff CFPB**

103.    Green Tree's practices as described in Paragraph 100 constitute unfair acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531(a) and (c)(1), and 12 U.S.C. § 5536(a)(1)(B).

**Unfair Acts and Practices Regarding Contacting
Consumers' Place of Employment**

104.    In numerous instances, in connection with servicing mortgage loans and collecting debts from consumers, Green Tree has: (1) called consumers at their place of employment after being advised by the consumers that such calls were not permitted by their employer; and (2) communicated with consumers' employers and co-workers without consumers' knowledge or consent, disclosing the existence and, sometimes, the amount of consumers' debts to employers and co-workers.

105.    Green Tree's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

**Count XV by Plaintiff FTC**

106.    Green Tree's practices as described in Paragraph 104 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**Count XVI by Plaintiff CFPB**

107.    Green Tree's practices as described in Paragraph 104 constitute unfair acts or practices in violation of the CFPA, 12 U.S.C. §§ 5531(a) and (c)(1), and 12 U.S.C. § 5536(a)(1)(B).

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

108.    In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, which became effective on March 20, 1978, and has been in force since that date.  Section 814 of the FDCPA, 15 U.S.C. § 1692*l*(a), provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.  Section 814 of the FDCPA, 15 U.S.C. § 1692*l*(a), also authorizes the Federal Trade Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the FTC Act.  The authority of the Federal Trade Commission in this regard includes the power to enforce the provisions of the FDCPA in the same manner as if the violations of the FDCPA were violations of an FTC trade regulation rule.  In 2010, Congress amended the FDCPA to grant authority to the CFPB, in addition to the FTC, to enforce the FDCPA with respect to any person subject to the CFPA.  15 U.S.C. § 1692*l*(b)(6).

109.    The term "consumer" as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), means "any natural person obligated or allegedly obligated to pay any debt."

110.    The term "debt" as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment."

111.    The term "location information" as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7), means "a consumer's place of abode and his telephone number at such place, or his place of employment."

112.    The term "debt collector" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6), includes any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  It does not include a person collecting debts that were not in default at the time that the person obtained them.  15 U.S.C. § 1692a(6)(F)(iii).

113.    Green Tree acquires servicing rights to some mortgages that are in default at the time of transfer and proceeds to collect on those mortgages.  With respect to these debts, Green Tree is a debt collector as defined by the FDCPA and its collection activities are covered by the FDCPA.

### Count XVII by Plaintiffs FTC and CFPB:
### Unauthorized Communications with Third Parties

114.    Section 804 of the FDCPA, 15 U.S.C. § 1692b, governs the manner in which debt collectors may communicate with any person other than the consumer for purposes of acquiring location information about the consumer.  Section 804(3) prohibits

debt collectors from communicating with any person for the purpose of acquiring location information more than once unless so requested by the person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete information.

115.    In numerous instances in connection with the collection of debts, Green Tree, directly or indirectly, has communicated more than once with persons other than the consumer for the alleged purpose of obtaining location information about the consumer without a reasonable belief that the earlier response of the person was erroneous or incomplete and the person had subsequently obtained correct or complete location information.

116.    The acts and practices alleged in Paragraph 115 constitute violations of Section 804(3) of the FDCPA, 15 U.S.C. §§ 1692b(3).

**Count XVIII by Plaintiffs FTC and CFPB:**
**Disclosing Debts to Third Parties**

117.    Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b), prohibits communications with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, unless the consumer gives prior consent to the debt collector directly.  For the purpose of Section 805(b), Section 805(d) of the FDCPA defines the term "consumer" to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."

118.    In numerous instances, in connection with the collection of debts, Green Tree, directly or indirectly, has communicated about a debt with persons other than the consumer; the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator; a consumer reporting agency; the creditor; or their attorneys. Green Tree has engaged in these communications without the permission of the consumer, or as otherwise allowed by Section 804.

119.    The acts and practices alleged in Paragraph 118 constitute violations of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b).

**Count XIX by Plaintiffs FTC and CFPB:**
**Calling at an Unusual or Inconvenient Time or Place and**
**Calling a Place of Employment**

120.    Section 805(a)(1) prohibits communications with a consumer in connection with the collection of any debt at a time or place known or which should be known to be inconvenient to the consumer, and Section 805(a)(3) specifically prohibits communications with a consumer at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.  For the purpose of Sections 805(a)(1) and (a)(3), Section 805(d) of the FDCPA defines the term "consumer" to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."

121.    In numerous instances, in connection with the collection of debts, Green Tree, directly or indirectly, has communicated with a consumer or the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator in

connection with the collection of debts at a time or place known by Green Tree or which should have been known by Green Tree to be inconvenient to the consumer.

122.    In numerous instances, in connection with the collection of debts, Green Tree, directly or indirectly, has communicated with a consumer or the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator at that person's place of employment even though Green Tree knew or had reason to know that the employer prohibited the person from receiving such communication.

123.    The acts and practices alleged in Paragraphs 121-122 constitute violations of Section 805(a) of the FDCPA, 15 U.S.C. § 1692c(a).

**Count XX by Plaintiffs FTC and CFPB:**
**Use of Obscene or Profane Language and**
**Annoying, Abusive, or Harassing Phone Calls**

124.    Section 806 of the FDCPA, 15 U.S.C. § 1692d, prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Section 806(2) specifically prohibits debt collectors from using obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.  Section 806(5) prohibits debt collectors from causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

125.    In numerous instances in connection with the collection of debts, Green Tree, directly or indirectly, has engaged in conduct the natural consequence of which is to harass, oppress, or abuse persons.

126.    In numerous instances in connection with the collection of debts, Green

Tree, directly or indirectly, has used obscene or profane language or language the natural

consequence of which is to abuse the hearer or reader.

127.    In numerous instances in connection with the collection of debts, Green

Tree, directly or indirectly, has caused telephones to ring or engaged persons in telephone

conversation repeatedly or continuously with intent to annoy, abuse, or harass the persons

at the called numbers, and the natural consequence of such calls has been to harass,

oppress or abuse persons.

128.    The acts and practices alleged in Paragraphs 125-127 constitute violations

of Section 806 of the FDCPA, 15 U.S.C. § 1692d.

## Count XXI by Plaintiffs FTC and CFPB:
## False or Misleading Representations to Collect a Debt

129.    Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors

from using any false, deceptive, or misleading representation or means in connection with

the collection of any debt.  Section 807(2)(a) specifically prohibits the false

representation of the character, amount, or legal status of any debt.  Section 807(4)

prohibits the representation or implication that nonpayment of any debt will result in the

arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of

any property or wages of any person unless such action is lawful and the debt collector or

creditor intends to take such action.  Section 807(10) prohibits debt collectors from using

any false representation or deceptive means to collect or attempt to collect any debt or to

obtain information concerning a consumer.

130.    In numerous instances in connection with the collection of debts, Green Tree, directly or indirectly, has made false representations about the character, amount, or legal status of a debt, including but not limited to false statements:

A.    About consumers' loan terms, when it acquired loans that had In-Process Modifications; and

B.    That consumers owe fees or other amounts.

131.    In numerous instances in connection with the collection of debts, Green Tree, directly or indirectly, has represented that nonpayment of a debt would result in the arrest or imprisonment of consumers or the seizure, garnishment, attachment, or sale of the consumers' property or wages, when in fact such action was not lawful or Green Tree did not intend to take such action.

132.    In numerous instances in connection with the collection of debts, Green Tree, directly or indirectly, has falsely represented that a payment method that entails a convenience fee was the only payment method available or the only payment method consumers could use to make timely payments.

133.    The acts and practices alleged in Paragraphs 130-132 constitute violations of Section 807 of the FDCPA, 15 U.S.C. § 1692e.

## Count XXII by Plaintiffs FTC and CFPB:
## Unfair Acts and Practices Regarding Unauthorized Withdrawals and Collection of Amounts Not Authorized by the Agreement or Permitted by Law

134.    Section 808 of the FDCPA, 15 U.S.C. § 1692f, prohibits debt collectors from using any unfair or unconscionable means to collect or attempt to collect any debt.

Section 808(1) specifically prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

135.    In numerous instances in connection with the collection of debts, Green Tree has caused payments to be taken from consumers' bank accounts without having previously obtained consumers' consent.

136.    In numerous instances in connection with the collection of debts, Green Tree unilaterally breached loan modification contracts that consumers negotiated with the prior servicers of their loans when it did not honor In-Process Loan Modifications that consumers were entitled to under these contracts.  Green Tree subsequently collected or attempted to collect amounts that were not authorized by the company's contracts with consumers or permitted by law.

137.    The acts and practices alleged in Paragraphs 135-136 constitute violations of Section 808 of the FDCPA, 15 U.S.C. § 1692f.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

138.    The FCRA, 15 U.S.C. § 1681 *et seq.*, was enacted in 1970 and became effective on April 25, 1971.  The Act has been in force since that date.  In 1996, the FCRA was amended extensively by Congress.  Among other things, Congress added Section 623 of the Act, which delineated the responsibilities of furnishers of information to consumer reporting agencies and became effective on October 1, 1997.

139.    Section 621 of the FCRA, 15 U.S.C. § 1681s(a), authorizes the Federal Trade Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that

enforcement specifically is committed to some other governmental agency, irrespective
of whether the person is engaged in commerce or meets any other jurisdictional tests set
forth by the FTC Act.  In 2010, Congress amended the FCRA to grant authority to the
CFPB, in addition to the FTC, to enforce the FCRA with respect to any person subject to
the CFPA.  15 U.S.C. § 1681s(b)(1)(H).

### Count XXIII by Plaintiffs FTC and CFPB:
### Furnishing Information Known to Be Inaccurate

140.     Section 623(a)(1)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A), prohibits
a person from furnishing information relating to any consumer to a consumer reporting
agency if the person knows or has reasonable cause to believe that the information is
inaccurate.

141.     In numerous instances in connection with furnishing information relating to
a consumer to a consumer reporting agency, Green Tree has furnished such information
while knowing or having reasonable cause to believe that the information was inaccurate.

142.     The acts and practices alleged in Paragraph 141 constitute violations of
Section 623(a)(1)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A).

### Count XXIV by Plaintiffs FTC and CFPB:
### Failing to Correct Inaccurate Information

143.     Section 623(a)(2) of the FCRA, 15 U.S.C. § 1681s-2(a)(2), provides that a
person who (A) regularly and in the ordinary course of business furnishes information to
one or more consumer reporting agencies about the person's transactions or experiences
with any consumer, and (B) has furnished to a consumer reporting agency information
that the person determines is not complete and accurate, shall promptly notify the

consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains incomplete or inaccurate.

144.    Green Tree regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about Green Tree's transactions or experiences with consumers.

145.    In numerous instances in which Green Tree has furnished to a consumer reporting agency information that it determines is not complete and accurate, Green Tree has failed to promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, or thereafter furnishes to the agency any of the information that remains not complete and accurate.

146.    The acts and practices alleged in Paragraph 145 constitute violations of Section 623(a)(2) of the FCRA, 15 U.S.C. § 1681s-2(a)(2).

## VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

147.    The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, covers certain acts and practices related to "federally related mortgage loans," including the servicing of those loans and the administration of their escrow accounts.

148.   RESPA covers the conduct of "servicers."  A "servicer," for purposes of RESPA, is "the person responsible for servicing of a loan."  Under RESPA, "servicing" means "receiving any scheduled periodic payments from a consumer pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the consumer as may be required pursuant to the terms of the loan."

149.   During the relevant time period for our investigation, RESPA required servicers to provide a written response acknowledging receipt of borrower correspondence about errors in their accounts within 20 days.  12 U.S.C. § 2605(e). Effective January 10, 2014, the 20 day requirement was amended to 5 days.

150.   During the relevant time period for our investigation, RESPA required servicers to respond to borrower correspondence about errors in their accounts within 60 days by either correcting erroneous account information or explaining to the borrower why the account information was not in error.  12 U.S.C. § 2605(e).  Effective January 10, 2014, the 60 day requirement was amended, in most instances, to 30 days with a permissible 15 day extension.

151.   Green Tree receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies.  Thus, it is a servicer within the meaning of RESPA.  12 C.F.R. § 1024.2(b).

152.    The loans that Green Tree services are "secured by a first or subordinate

lien on residential real property . . . " and are made in whole or in part by lenders that are

regulated by agencies of the Federal Government.  Therefore, those loans are "federally

related mortgage loans" for the purposes of RESPA.  12 U.S.C. § 2602.

**Count XXV by Plaintiff CFPB:**
**<u>Failure to Timely Respond to Qualified Written Requests</u>**

153.    Section 6(e)(1) of RESPA, 12 U.S.C. § 2605(e)(1), required servicers to

provide a written response acknowledging receipt of a qualified written request from a

consumer for information relating to the servicing of the loan within 20 days.

154.    Within 60 days of receipt of a qualified written request, Section 6(e)(2) of

RESPA, 12 U.S.C. § 2605(e)(2), required servicers to make corrections to a consumer's

account (and notify the consumer of the correction), conduct an investigation and tell the

consumer the reason the account is not in error, or conduct an investigation and explain to

the consumer why information requested is unavailable or cannot be obtained.

155.    A qualified written request is "written correspondence . . . that (i) includes,

or otherwise enables the servicer to identify, the name and account of the consumer; and

(ii) includes a statement of the reasons for the belief of the consumer, to the extent

applicable, that the account is in error or provides sufficient detail to the servicer

regarding other information sought by the consumer."  12 U.S.C. § 2605(e)(1)(B).

156.    Consumers have sent correspondence to Green Tree with sufficient

information for Green Tree to identify their names and account numbers regarding issues

with their unpaid loan balances, payment due dates, interest rates, monthly payment

amounts, and/or delinquency status.  This correspondence constitutes a "qualified written request."

157.    Green Tree has failed to acknowledge receipt of these qualified written requests within 20 days and/or correct account errors or conduct investigations within 60 days.  Therefore, it has violated Section 6(e) of RESPA, 12 U.S.C. § 2605(e)(2).

## Count XXVI by Plaintiff CFPB:
## Failure to Protect Credit Rating

158.    Section 6(e)(3) of RESPA, 12 U.S.C. § 2605(e)(3), prohibits servicers from providing adverse information regarding any payment that is the subject of  a qualified written request to any consumer reporting agency, as such term is defined under section 603 of the FCRA, for 60 days beginning on the date the servicer received the qualified written request.

159.    Green Tree has provided adverse information regarding payments that were the subject of qualified written requests to consumer reporting agencies during the 60 day period.  Therefore, it has violated Section 6(e)(3) of RESPA, 12 U.S.C. § 2605(e)(3).

## Count XXVII by Plaintiff CFPB:
## Failure to Make Timely Escrow Account Disbursements

160.    Section 6(g) of RESPA, 12 U.S.C. § 2605(g), states that "[i]f the terms of any federally related mortgage loan require the consumer to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due."

161.    The requirements of Section 6(g) are further explained in Regulation X, 12 C.F.R. § 1024.17(k), which states that "[i]f the terms of any federally related mortgage loan require the consumer to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the consumer's payment is not more than 30 days overdue."

162.    In numerous instances, for consumers whose loans included escrow accounts and who were either current on their mortgage payments or no more than 30 days past due, Green Tree has failed to pay the property taxes on or before the date the consumer would be charged a penalty.

163.    Since Green Tree has failed to make payments from consumers' escrow accounts for property taxes "in a timely manner as such payments become due," it has violated Section 6(g) of RESPA, 12 U.S.C. § 2605(g).

## CONSUMER INJURY

164.    Consumers have suffered, and will continue to suffer, substantial injury as a result of Green Tree's violations of Section 5(a) of the FTC Act, Sections 1031 and 1036(a)(1)(B) of the CFPA, the FDCPA, the FCRA, and RESPA, as set forth above.  In addition, Green Tree has been unjustly enriched as a result of its unlawful acts or practices.  Absent injunctive relief by this Court, Green Tree is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

165.    Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is empowered to grant permanent injunctive relief and such other relief as the Court may

deem appropriate to halt and redress violations of any provision of law enforced by the

FTC, including the FTC Act, the FDCPA, and the FCRA.  The Court, in the exercise of

its equitable jurisdiction, may award ancillary relief, including rescission or reformation

of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies,

and the costs of pursuing this action, to prevent and remedy any violation of any

provision of law enforced by the FTC.

166.    Under Section 1055 of the CFPA, 12 U.S.C. § 5565, this Court has

"jurisdiction to grant any appropriate legal or equitable relief with respect to a violation

of Federal consumer financial law . . ." including the CFPA, the FDCPA, the FCRA, and

RESPA.  12 U.S.C. § 5565(a)(1).  This relief includes rescission, refund of moneys,

restitution, disgorgement or compensation for unjust enrichment, payment of damages or

other monetary relief, public notification regarding the violation, limits on the activities

or functions of the person, and civil money penalties.  12 U.S.C. § 5565(a)(2).  In

addition, the CFPB may recover its costs in connection with the action, if it is the

prevailing party.  12 U.S.C. § 5565(b).

## **PRAYER FOR RELIEF**

167.    Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15

U.S.C. § 53(b), Section 814(a) of the FDCPA, 15 U.S.C. §1692*l*(a), Section 621(a) of the

FCRA, 15 U.S.C. § 1681s(a), and the Court's own equitable powers; and Plaintiff CFPB,

pursuant to Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565, Section

814(b)(6) of the FDCPA, 15 U.S.C. §1692*l*(b)(6), Section 621(b)(1)(H) of the FCRA, 15

U.S.C. § 1681s(b)(1)(H), Section 6 of RESPA, 12 U.S.C. § 2605, and the Court's own equitable powers, request that the Court:

      A.     Permanently enjoin Green Tree from committing future violations of the FTC Act, the CFPA, the FDCPA, the FCRA, and RESPA;

      B.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Green Tree's violations of the FTC Act, the CFPA, the FDCPA, the FCRA, and RESPA, including but not limited to rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

      C.     Award Plaintiff CFPB civil money penalties for Green Tree's violations of the CFPA, the FDCPA, the FCRA, and RESPA;

      D.     Award Plaintiffs the costs of bringing this action; and

      E.     Award additional relief as the Court may determine to be just and proper.

Dated: *April 21, 2015*

Respectfully submitted,

FEDERAL TRADE COMMISSION:

CONSUMER FINANCIAL PROTECTION
BUREAU:

JONATHAN NUECHTERLEIN
General Counsel

JAMES SUGARMAN
Acting Assistant Litigation Deputy

Lisa Rothfarb
Maryland Bar
Daniel Dwyer
California Bar No.286701
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Telephone: 202-326-2602 (Rothfarb)
Telephone: 202-326-2957 (Dwyer)
Facsimile: 202-326-3629
Email:       LRothfarb@ftc.gov,
             DDwyer@ftc.gov

Kirsten Ivey-Colson
Washington, DC Bar No. 470102
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Telephone: 202-435-7354 (Ivey-Colson)
Facsimile: (202) 435-7722
Email:       Kirsten.Ivey-Colson@cfpb.gov