## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| _____ )<br>FEDERAL TRADE COMMISSION and )<br>CONSUMER FINANCIAL PROTECTION )<br>BUREAU, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>GREEN TREE SERVICING LLC, a Delaware )<br>limited liability company, )<br> )<br>Defendant. )<br>_____) | 15-cv-02064 (SRN-JSM) |

## STIPULATED ORDER FOR PERMANENT
## INJUNCTION AND MONETARY JUDGMENT

Plaintiffs, the Federal Trade Commission ("Commission") and the Consumer

Financial Protection Bureau ("Bureau"), have filed their Complaint for a permanent

injunction and other relief in this matter.  The Commission brought this action pursuant

to Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

§§ 45(a) and 53(b).  The Bureau brought this action pursuant to Sections 1031(a),

1036(a)(1), and 1054 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12

U.S.C. §§ 5531(a), 5536(a)(1), and 5564, and sought civil penalties pursuant to Section

1055 of the CFPA, 12 U.S.C. § 5565(c).  Defendant Green Tree Servicing LLC

("Defendant" or "Green Tree") waived service of the summons and the Complaint. The Commission, Bureau, and the Defendant stipulate to entry of this Order for Permanent Injunction and Monetary Judgment ("Order").

THEREFORE, it is ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint alleges a claim upon which relief may be granted under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; and Section 6 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R. part 1024 (formerly codified at 24 C.F.R. part 3500) (collectively "RESPA").

3.     For purposes of this settlement, Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.     All parties waive all rights to appeal or otherwise challenge or contest the validity of this Order. Defendant further waives and releases any claim it may have against the Commission or the Bureau, and their employees, representatives, or agents.

5.     Defendant waives any claim that it may have under the Equal Access to

Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

6.      The Plaintiffs and Defendant, by and through their counsel, have agreed that entry of this Order resolves all matters in dispute between them arising from the facts and circumstances alleged in the Complaint in this action that have taken place as of the Effective Date, except that the Bureau specifically reserves and does not release any liability arising under any provision of the Bureau's rules relating to mortgage servicing (12 C.F.R. § 1024.30, *et seq.*) as of January 10, 2014.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.      "Collecting on past-due debt(s)" means recovering or attempting to recover, directly or indirectly, debts owed or due or asserted to be owed or due, for which consumers are currently in default, as default is defined in the loan agreement or applicable document creating the debt obligation.

2.      "Debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

3.       "Defendant" means Defendant Green Tree Servicing LLC, and its successors and assigns.  For purposes of this definition, an "assign" means a person who

purchases all or substantially all of the assets of Green Tree Servicing LLC or of Green Tree Servicing LLC's division(s) or major business unit(s) that are engaged as a primary business in customer-facing servicing of residential mortgage loans.

4.      "Effective Date" means the date on which the Order is entered.

5.      "Grace period" means the period between the date when a loan payment is due and the date when Green Tree is permitted to assess a late fee under the related loan documents.

6.      "In-process loan modification" means a trial or permanent loan modification offered by a servicer that was either accepted by the borrower or for which the time for the borrower to accept the offer has not expired and the offer has not been rejected, but is not finalized as a permanent modification before servicing rights on the loan are transferred to another entity.  It includes trial modifications in which the prior servicer agreed to modify the loan payment terms unless Defendant has clear written evidence that the borrower has failed to perform under the trial loan modification terms. It also includes modifications in which the consumer completed making the trial payments before the loan was transferred to Defendant, but the permanent modification was not input into the prior servicer's system before the transfer.

7.       "Investigation" means objectively evaluating the circumstances and considering information, including an assessment of the relevance, reliability, accuracy, integrity, and completeness of such information, to determine whether a consumer owes a

debt in the amount asserted or to assess a borrower's notice of error or qualified written request.  The information Defendant shall assess in an investigation, where applicable to the dispute, shall include but not be limited to:

(a)     the information that Defendant received from the credit originator or any prior servicer or owner of the debt, such as: (i) the consumer's credit application, (ii) the credit contract between the consumer and the credit originator, (iii) documents with the current or former name, address, and telephone number of the consumer, (iv) documents with the consumer's account number, in whole or in part, and periodic billing statements, (v) payment/transaction history, (vi) documents with the date and outstanding balance, and (vii) servicing notes;

(b)     the information that Defendant received from data aggregators, data brokers, consumer reporting agencies, skip tracers, and other third parties, such as: (i) documents with the current or former name, address, and telephone number of the consumer, (ii) documents with consumer report information, including credit scores and updates to the information in consumer reports, and (iii) the scoring of the debt through the use of a predictive model;

(c)     the information that Defendant created or maintained in collecting

**Page 5 of 65**

on the debt, such as servicing notes and payment history from the

immediately preceding two years; and

(d)     the information the Defendant received from the consumer denying,

disputing, or challenging the claim that the consumer owes the debt

or the amount of the debt, such as:  (i) documents with the

consumer's current or former name, address, and telephone number,

(ii) receipts or other evidence of payment from the credit originator

or any prior servicer or owner of the debt, or a debt collector, (iii)

canceled checks, bank account statements, credit card statements,

and other documents evidencing payment, and (iv) a consumer

dispute relating to the disputed amount.

8.     "Involuntary transfer" means a transfer when the transferor servicer is in

breach of, or default under, its servicing agreement for loss mitigation related-servicing

performance deficiencies, or is in receivership, and is required to transfer servicing to

another servicer in thirty (30) days or less by an unaffiliated investor, or a court or

regulator with jurisdiction.

9.     "Loss mitigation" means modified payment arrangements, trial, permanent

and in-process loan modifications, forbearance plans, short sales, deed-in-lieu agreements

and any other non-foreclosure home retention or non-retention option offered by the

owner or assignee of a mortgage loan that is made available to the consumer through a

prior servicer or Defendant.

10.     "Portfolio" means a group of loans for which the mortgage servicing rights are transferred to or from Defendant pursuant to a single contract for the sale or transfer of mortgage servicing rights.

11.     "Related consumer action" means a private action by or on behalf of one or more consumers, or enforcement action by another governmental agency, entity, or representative, brought against Defendant based on substantially the same conduct or issues as alleged in the Complaint.

12.     "Servicing" means collecting, receiving and applying payments made on a consumer's account pursuant to the terms of the loan agreement, such as payments of principal, interest, taxes, and fees; administering loan accounts; receiving and processing data and documentation for loan accounts transferred from prior servicers; making loan-related communications; responding to borrower notices asserting an error and qualified written requests; providing periodic billing statements to consumers; maintaining records of the status of consumers' loan accounts; providing information to and resolving disputes with consumers regarding loan accounts; disbursing payments from consumers' escrow accounts; providing loss mitigation, including but not limited to loan modifications and short sales; pursuing foreclosure; repossessing property; filing bankruptcy claims; calculating deficiency judgments; using consumer reports and furnishing information to consumer reporting agencies; and collecting or assessing fees in

relation to any of the foregoing.

13. "Transfer," as it appears in Sections IV, V, and VII of this Order, means the transfer of mortgage servicing rights, or of servicing responsibilities, including through subservicing or whole loan servicing arrangements.

## I.   ORDER FOR EQUITABLE MONETARY RELIEF

**IT IS ORDERED** that:

A.   Judgment is entered in favor of the Commission and the Bureau against Defendant in the amount of Forty Eight Million Dollars ($48,000,000) total as follows:

    1.   Eighteen Million Dollars ($18,000,000) for alleged violations of the FTC Act, CFPA, and FDCPA with respect to Defendant's alleged misrepresentations relating to payment methods that entail a convenience fee.

    2.   Thirty Million Dollars ($30,000,000) for alleged violations of the FTC Act, CFPA, FDCPA, and RESPA with respect to Defendant's conduct relating to short sales and in-process loan modifications, including Defendant's alleged failure to timely respond to qualified written requests relating to in-process loan modifications and with respect to Defendant's alleged misrepresentations about the time it will take to review short sale requests.

B.   Within ten (10) days of entry of this order, Defendant is ordered to pay to

the Bureau $48,000,000 dollars in full satisfaction of the judgment in favor of the

Commission and the Bureau as set forth in Paragraphs A.1 and A.2 of this Section. Such

payment shall be made by wire transfer to the Bureau or to such agent as the Bureau may

direct, and in accordance with wiring instructions to be provided by counsel for the

Bureau.

C.      All money paid to the Bureau pursuant to this Section shall be deposited

into a fund or funds administered by the Bureau or its agent in accordance with

applicable statutes and regulations to be used for consumer redress, including but not

limited to refund of moneys, restitution, or other monetary relief, and for any attendant

expenses for the administration of such redress.

D.      If the Bureau, in consultation with the Commission, decides that redress to

consumers is wholly or partially impracticable or otherwise inappropriate or funds remain

after redress is completed, the Bureau may apply any remaining money for such other

relief (including consumer information remedies) as it determines to be reasonably

related to Defendant's practices alleged in the Complaint. Any funds not used for such

relief are to be deposited to the U.S. Treasury as disgorgement. Defendant has no right to

challenge any actions the Bureau, the Commission, or their representatives may take

pursuant to this Paragraph.

E.      Redress provided by Defendant shall not limit consumers' rights in any

way or prevent Defendant from asserting in a related consumer action that a consumer

should not recover for any amounts paid under this Order.

F.      In light of the monetary relief to be paid to the Bureau, and to avoid double payment, the FTC is subrogating its claim for equitable monetary relief to the Bureau's claim.

## II.      ORDER TO PAY CIVIL MONEY PENALTIES

A.      Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the alleged violations of law in the Complaint, and taking into account the factors set forth in 12 U.S.C. § 5565(c)(3), Defendant shall pay a civil money penalty of Fifteen Million Dollars ($15,000,000) to the Bureau, as directed by the Bureau and as set forth herein.

B.      Within ten days of the Effective Date, Defendant shall pay the civil money penalty in the form of a wire transfer to the Bureau or to such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the Bureau.

C.      The civil money penalty paid under this Order shall be deposited in the Civil Penalty Fund of the Bureau in accordance with Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

D.      Defendant shall treat the civil money penalty as a penalty paid to the government for all purposes.  Regardless of how the Bureau ultimately uses those funds, Defendant shall not:

1.      Claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil money penalty that Defendant pays under this Order; or

2.      Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil money penalty that Defendant pays under this Order.

E.      To preserve the deterrent effect of the civil money penalty, in any related consumer action, Defendant shall not argue that Defendant is entitled to, nor shall Defendant benefit by, any offset or reduction of any monetary remedies imposed in the related consumer action, because of the civil money penalty paid in this action ("Penalty Offset").  If the court in any related consumer action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury.  Such a payment shall not be deemed an additional civil money penalty and shall not be deemed to change the amount of the civil money penalty imposed in this action.

F.      In light of the monetary relief to be paid to the Bureau, and to avoid double payment, the FTC is subrogating its claim for civil penalties to the Bureau's claim.

### III.    ADDITIONAL MONETARY PROVISIONS

A.      In the event of any default on Defendant's obligations to make payment

Page 11 of 65

under this Order, interest, computed pursuant to 28 U.S.C. § 1961, as amended, shall

accrue on any outstanding amounts not paid from the date of default to the date of

payment, and shall immediately become due and payable.

B.     Defendant relinquishes all dominion, control, and all legal and equitable

right, title, and interest to the funds paid to the fullest extent permitted by law and no part

of the funds shall be returned to Defendant.

C.     The facts alleged in the Complaint will be taken as true, without further

proof, in any subsequent civil litigation by or on behalf of the Commission or Bureau in a

proceeding to enforce its rights to any payment or monetary judgment pursuant to this

Order.

D.     The facts alleged in the Complaint establish all elements necessary to

sustain an action by the Commission or Bureau pursuant to Section 523(a)(2)(A) of the

Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel

effect for such purposes.

E.     Defendant acknowledges that its Taxpayer Identification Number, which

Defendant previously submitted to the Commission or Bureau, may be used for collecting

and reporting on any delinquent amount arising out of this Order, in accordance with 31

U.S.C. § 7701.

F.     For a period of three (3) years from the Effective Date, within thirty (30)

days of the entry of a final judgment, consent order, or settlement in a related consumer

action, Defendant shall notify the Bureau Enforcement Director of the final judgment, consent order, or settlement in writing.  That notification shall indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and should describe the consumers or classes of consumers to whom that redress has been or will be paid.

## IV.   INJUNCTION AGAINST UNSUBSTANTIATED CLAIMS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.     Making any representation, expressly or by implication, that a consumer's account has unpaid balances, payment due dates, interest rates, monthly payment amounts, delinquency statuses, unpaid fees, or other amounts due, unless, at the time of making the representation, Defendant can substantiate such a representation, including but not limited to situations in which:

1.     Defendant knows or reasonably should know that a consumer, at the time the consumer's loan was transferred to Defendant, was performing or previously completed performance under a trial or permanent loan modification with the prior servicer of the loan but Defendant continues to attempt collection from the consumer under

Page 13 of 65

the original, unmodified mortgage loan terms.  Defendant reasonably should know that a consumer was performing or previously completed performance under a trial or permanent loan modification with a prior servicer once Defendant receives any information from the prior servicer, the consumer, or any other source substantiating that the consumer was performing or previously completed performance under a trial or permanent loan modification; or

2.      Defendant knows or reasonably should know that the information for the account is facially unreliable, materially inaccurate, or missing material information, but Defendant continues to attempt collection on the account without commencing and completing an investigation regarding the account.

3.      Nothing in this provision shall be interpreted to preclude Defendant from accurately representing for informational purposes contractual amounts that remain due and owing until a permanent loan modification has been finalized, provided that such representation does not mislead a consumer regarding the amounts due under the modification.

B.      Failing, after a consumer orally denies, disputes, or challenges Defendant's claim that the consumer owes a debt or owes a debt in the amount asserted to: (i) provide

the consumer orally and contemporaneously with instructions for submitting the dispute

in writing; and (ii) within 14 days of the consumer disputing Defendant's claim, provide

the consumer clear and conspicuous written instructions on how to submit the dispute in

writing; and

   C. Failing, after a consumer denies, disputes, or challenges, in

writing, the Defendant's claim that the consumer owes the debt or owes the debt in the

amount asserted, to:

     1. Within fourteen (14) days after the denial, dispute, or challenge, or

       when the debt is next reported to a consumer reporting agency, if

       earlier, report the debt as disputed; and

     2. Promptly after the denial, dispute, or challenge:

       a. Cease collection of any disputed amount, inform the

        consumer that it has ceased collection of the disputed amount,

        and, where the decision is within Defendant's control, not

        transfer servicing to any person or entity other than the

        creditor to whom the debt is owed, until the Defendant

        satisfies its obligations to conduct an investigation and

        respond as set forth in Paragraphs (b) and (c) below or obtains

        an agreement from the transferee servicer to conduct such an

investigation and respond as set forth in Paragraphs (b) and (c) below;

b.     Commence and complete, within thirty (30) days after a consumer denies, disputes, or challenges Defendant's claim that a consumer owes the debt or that he or she owes the debt in the amount asserted, an investigation of the denial, dispute, or challenge, unless the consumer provides information that is relevant to the investigation during the 30-day time period, in which case the investigation may be extended for no more than fifteen (15) additional days. ***Provided that*** Defendant shall not be required to investigate any denial, dispute, or challenge if it reasonably determines that the denial, dispute, or challenge is frivolous or irrelevant.  A dispute qualifies as frivolous or irrelevant if the Defendant does not have sufficient information to investigate and the consumer does not provide the necessary information when asked, or if Defendant has previously complied with its obligation to investigate and respond and the consumer does not provide to Defendant or Defendant does not otherwise acquire or obtain information, data, or documentation that was not considered

in any prior investigation.  Defendant shall notify the consumer within five (5) business days of Defendant's determination if the denial, dispute, or challenge is not investigated under this proviso; and

c.      If Defendant reasonably concludes after its investigation:

i.      That the consumer owes the debt in the amount asserted, Defendant, within ten (10) days of reaching its conclusion, shall provide verification of the debt to the consumer, inform the consumer of its conclusion, and provide the basis for it, after which it may resume collection of the previously-disputed amount.  If the consumer continues to dispute the debt, nothing in this order supersedes the requirement of § 623(a)(3) of the FCRA, 15 U.S.C. § 1681s-2(a)3, that Defendant convey the dispute when furnishing information on the debt to any consumer reporting agency.

ii.     That the consumer does not owe the debt or the debt cannot be verified, Defendant shall, within five (5) days of reaching its conclusion: (a) inform the consumer of its conclusion and the basis for it; (b)

Page 17 of 65

request that each consumer reporting agency to which Defendant had reported the debt or caused the debt to be reported, delete the item from the consumer's credit reporting file; (c) cease collection; and (d) where the decision is within Defendant's control, not transfer servicing to any person or entity other than the creditor to whom the debt is allegedly owed.

iii. That the consumer does owe the debt but not in the amount that Defendant asserted, Defendant shall, within five (5) days of reaching its conclusion: (a) inform the consumer of its conclusion and the basis for it; and (b) provide to each consumer reporting agency to which the debt has been reported any correction to the reported information that is necessary to make the information provided by Defendant accurate, after which it may continue collection.

*Provided that,* if the consumer initiates contact with Defendant by any means, Defendant may respond to the consumer prior to the completion of the investigation.

*Provided further that* the limitations on transfer in Subsections IV.C.2.a and IV.C.2.c.ii shall not apply when the transfer is between owners of the right to perform

servicing who do not perform the servicing and there is no change in the subservicer.

*Provided further that*, nothing in this Section IV prohibits Defendant from requiring consumers who deny, dispute, or challenge a debt on the grounds of fraud or identity theft to do so in writing, so long as Defendant clearly and conspicuously discloses these requirements.  Once Defendant receives an identity theft report, the requirements of § 623(a)(6)(B) of the FCRA, 15 U.S.C. § 1681s-2(a)(6)(B), apply.

## V.    DATA INTEGRITY REQUIREMENT

**IT IS FURTHER ORDERED** that Defendant, in connection with loan servicing and collection activities, shall, no later than one hundred and twenty (120) days after the date of entry of this Order, establish and maintain a comprehensive data integrity program ("Program") reasonably designed to ensure the accuracy, integrity, and completeness of the data and other information about accounts that Defendant services, collects, or sells, including any accounts acquired by or transferred to Defendant.  The Program, the content and implementation of which must be fully documented in writing, shall contain administrative, technical, and physical safeguards appropriate to the nature, size, complexity, and scope of Defendant's loan servicing activities, and shall include:

A.    The designation of an employee or employees to oversee the Program;

B.    The maintenance of sufficient personnel that are adequately trained to perform the Program requirements in a timely and legal manner;

C.      The identification of material internal and external risks to the accuracy, integrity, and completeness of loan servicing data that could result in material errors to consumers' accounts and assessment of the sufficiency of any safeguards in place to control these risks.  At a minimum, this risk assessment shall consider risks in each relevant area of operation, including, but not limited to (1) employee training and management, (2) information systems, including network and software design, servicing transfer protocols, information processing, storage, transmission, and disposal, and (3) prevention, detection, and response to any systems failure;

D.      The completion of due diligence prior to receiving transferred mortgage servicing rights.  Specifically, prior to receiving the transfer of mortgage servicing rights, Defendant shall conduct due diligence to understand and implement steps necessary to resolve issues with the type of loan level information and documentation in the transferor's possession and control, the transferor's ability to transfer the information electronically, in images, or only in paper records, material gaps in the transferor's records, and Defendant's ability to promptly process the information to be provided by the transferor, and otherwise ensure that Defendant will be able to comply with its servicing obligations with respect to every loan transferred.  Defendant shall seek assurance that the transferor will transfer all material loan level information in its possession or control at or before the time of transfer.

E.      The testing, identification, and correction of material errors in the following data fields in Defendant's servicing systems of record: monthly payment amount, principal balance, interest rate, loan term, escrow account balance, suspense account balance, delinquency status, loss mitigation status, and foreclosure status (collectively, the "Tested Data Fields").

1.      Portfolios Tested and Timing for Testing Portfolios.

a.      *Testing of Portfolios Transferred After the Effective Date of this Order.*  In addition to the requirements in Section VII.A.3 relating to loans in loss mitigation, within twenty (20) days after the transfer of any portfolio transferred after the Effective Date of this Order, or within twenty (20) days after the establishment of the Program, whichever is later, Defendant shall conduct a "Data File Review."  A Data File Review shall mean testing to examine the completeness and accuracy of loan information and to identify material errors. This shall include comparing the Tested Data Fields in Defendant's servicing systems of record as of the loan transfer cutoff date for material errors against the electronic data and the loan-level documents provided by the transferor

servicer from which Defendant acquired the servicing rights
to the portfolio.

b.   *Previously Acquired Portfolios*.  To the extent that Defendant
is, as of the Effective Date, servicing mortgage loans in
portfolios at risk for widespread or systemic errors in the
Tested Data Fields, for which portfolios Defendant acquired
the servicing rights after January 1, 2010, Defendant shall
perform a Data File Review within 15 days after the
establishment of the Program.  A portfolio is at risk for
widespread or systemic errors if it exhibits any of the
following factors:  (1) the portfolio was an involuntary
transfer, (2) the portfolio transferred under an agreement
containing a disclaimer as to the availability of loan account
level information and documents, (3) the portfolio transferred
from a servicer or owner that Defendant has learned
previously provided materially inaccurate information for
more than 5% of the portfolio or had missing material
information for more than 5% of the portfolio, (4) Defendant
has other information about the portfolio's prior owner or
servicer and its methods of doing business that suggests that

more than 5% of the portfolio contains material errors or

materially incomplete information, or (5) after onboarding,

consumers have disputed in writing the accuracy of the

information in accounts amounting to more than 2% of a

portfolio serviced by Defendant.

2.     Percentage of Each Portfolio to be Tested.

    a.     All Data File Reviews, as prescribed in Subsection V.E.1, and

On-Going Testing, as prescribed in Subsection V.E.4, shall be

statistically valid and based on an appropriate sampling

methodology, such that the results from the sample can be

reliably extrapolated to the loan portfolio as a whole, and

shall include both random and risk-based selection criteria.

    b.     If a Data File Review performed pursuant to Section V.E.1. of

this Order reveals a material error rate of more than 5% with

respect to any Tested Data Field(s) in a portfolio, Defendant

shall, within thirty (30) days, complete a Data File Review of

such field(s) for all loans in the portfolio.  In the event that

the full-portfolio Data File Review described in this section

reveals a material error rate exceeding 5% of all loans in the

portfolio with respect to any of the field(s) tested under this

subsection, Defendant shall perform a Data File Review of such field(s) for the entire portfolio every six months until the material error rate falls below 5%.

3.     **Correction of Errors.**  Upon completion of any Data File Review, Defendant shall correct and remediate any individual account errors identified by the Defendant, including promptly refunding or reversing any overcharges and stopping foreclosure where appropriate.

4.     **Ongoing Testing.**  Within 180 days of the Effective Date, and every six months thereafter, Defendant shall identify any portfolios serviced by Defendant for which, in the immediately preceding six months, consumers representing more than 2% of the relevant portfolio have disputed in writing the accuracy of the information in the Tested Data Fields.  In the event any such portfolios exist, Defendant shall determine whether there exist any systemic issues giving rise to the disputes about errors in the accuracy of the Tested Data Fields in the portfolio and, if any errors are found, Defendant shall develop and implement a plan to correct the errors.  ***Provided that***, when a consumer orally denies, disputes, or challenges the accuracy of the information contained in a Tested Data Field,

Defendant shall (i) provide the consumer orally and
contemporaneously with instructions for submitting the dispute in
writing; and (ii) within 14 days of the consumer disputing
Defendant's claim, provide the consumer clear and conspicuous
written instructions on how to submit the dispute in writing.

***Provided that*** the requirements of this Subsection V.E shall not apply to transfers
when the transfer is between owners of the right to perform servicing who do not perform
the servicing and there is no change in the subservicer.

F.      The design and implementation of reasonable safeguards to control the
risks identified through risk assessment, and regular auditing or testing or monitoring of
the effectiveness of the safeguards' key controls, system, and procedures;

G.      The regular auditing, testing, or monitoring of the effectiveness of the
Program using statistically valid samples, such that the samples include both random and
risk-based selection criteria and the results from the samples can be reliably extrapolated
to the Program as a whole; and

H.      The evaluation and adjustment of the Program in light of the results of the
required auditing, testing, or monitoring, and any material changes to Defendant's
operations or business arrangements that may significantly impact the Program, or any
other circumstances that Defendant knows or has reason to know may have a material
impact on the integrity, accuracy, and completeness of Defendant's loan servicing

process, or data and other information about accounts that Defendant services, collects, or sells.

*Provided that*, in the event of a conflict between this Section V and the requirements of federal, state, or local laws or the standard provisions imposed on servicers by the Department of Treasury, Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Administration, the Department of Veterans Affairs, the Rural Housing Administration, and any other similar organization that may come into existence after the entry of this Order such that Defendant cannot comply with this Section V without violating these requirements, Defendant shall document such conflicts and notify the Commission and the Bureau that it intends to comply with the requirements to the extent necessary to eliminate the conflict.

*Provided further that,* in the event of an involuntary transfer to Defendant which results in a delay in the transferor's transfer of relevant information or a volume of errors in the transferor's data that prevents Defendant from being able to comply with the time limits in this Section, Defendant shall submit a written plan to the Bureau and the Commission within ten (10) days after the date of the transfer identifying the cause of the delay and setting forth the specific steps it is taking, the resources it is devoting, and Defendant's expected timeline for complying with the requirements of this Section.  If such plan is not objected to by the Bureau or the Commission within ten (10) days of submission of the plan, Defendant must proceed to implement the plan.  If the Bureau or

the Commission objects to the plan within ten (10) days of submission, Defendant will make reasonable efforts to amend the plan to address any objection.  Defendant shall not take more than 120 days from the date of the transfer to satisfy the requirements of this Section.

## VI.    ASSESSMENT

**IT IS FURTHER ORDERED** that:

A.    Defendant shall, within one hundred and twenty (120) days after the implementation of the Data Integrity Program required by Section V of this Order, and biennially thereafter for eight (8) years after entry of this Order, obtain an assessment and report ("Assessment") from a qualified, objective, independent, third-party professional, the identity of which is agreed to by a representative of the Commission and a representative of the Bureau, that, using procedures and standards generally accepted in the profession:

1.    Sets forth the specific data integrity program that Defendant has implemented and maintained during the reporting period;

2.    Explains how the data integrity program is appropriate to Defendant's size and complexity, and the nature and scope of Defendant's activities;

3.    Explains how the data integrity program meets or exceeds the protections required by Section V of this Order; and

4.      Certifies that to the best of the certifier's knowledge and belief the

data integrity program is operating with sufficient effectiveness to

provide reasonable assurance of the material accuracy, integrity, and

completeness of Defendant's records.

B.      Defendant shall provide a copy of the first Assessment to the Commission

within ten (10) days after the Assessment is delivered to Defendant.  Defendant shall,

within thirty (30) days of a request, provide the Commission with a copy of all plans,

reports, studies, reviews, audits, audit trails, policies, training materials, and assessments,

whether prepared by or on behalf of Defendant, relied upon to prepare such Assessment.

All subsequent biennial Assessments shall be retained by Defendant and a copy provided

to the Commission within thirty (30) days of request.  The Commission will provide to

the Bureau a copy of all Assessments and any other materials produced pursuant to this

Section VI of this Order.

## VII.   INJUNCTION RELATING TO MORTGAGE SERVICING

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and

employees, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently

restrained and enjoined from:

**Limitations on the Transfer of Servicing for Loans in Loss Mitigation**

A.      Transferring or acquiring servicing for loans in loss mitigation or with a

Page 28 of 65

loss mitigation application pending, regardless of whether Defendant is the transferor or transferee, unless:

1.      The transferor or transferee identifies by loan number the following categories of loans at least thirty (30) days prior to transfer, and updates such information at least five (5) days prior to transfer:

   a.      Loans in any stage of pending loss mitigation, including but not limited to in-process loan modifications;

   b.      Loans approved or converted to a permanent loss mitigation outcome within sixty (60) days of transfer; and

   c.      Loans denied loss mitigation within sixty (60) days of transfer;

2.      The transferor agrees to make all reasonable efforts to provide the transferee all the following information in its possession or control, prior to transfer or at a minimum, agrees to provide this information by the date of the transfer: all account-level documents and data relating to loss mitigation, including a copy of the mortgage note, periodic billing statements for the two years prior to the service transfer, payment history for the two years prior to the service transfer, escrow and suspense account information, loss mitigation applications, loss mitigation notices, documentation and information

Page 29 of 65

received from the borrower for purposes of evaluating the borrower

for loss mitigation, any net present value or other analysis by a

servicer in connection with a borrower's application for loss

mitigation, loss mitigation agreements, any written communications

or notes of oral communications with the borrower about the loss

mitigation, and any other information needed to administer any

pending loss mitigation applications or in-process

loan modifications; and

3.     The contract for the transfer includes the following requirements:

    a.     The transferee will engage in quality control work to validate

        that the loss mitigation data matches the images and paper

        documents received, make reasonable efforts to identify

        missing loss mitigation data, documentation, or information

        and request missing information from the transferor within

        fifteen (15) days of transfer; and

    b.     Within ten (10) days of a request from the transferee, the

        transferor will provide missing or incomplete loss mitigation

        data, documentation, or information in its possession or

        control;

4.     The contract for the transfer also includes the following

requirements:

a.    The transferee will honor loss mitigation agreements entered into by the prior servicer, including but not limited to in-process loan modifications;

b.    The transferee will continue processing pending loss mitigation requests received in the transfer; and

c.    Within thirty (30) days of transfer, the transferee will finish reviewing and resolve any loss mitigation request that was pending within sixty (60) days of transfer for which the transferee or buyer lacks clear written evidence that such request was denied, and provide the consumer an opportunity to provide any necessary missing information.

*Provided, however, that* the requirements of Subsections VII.A.1, 2, and 3 shall not  apply to transfers when the transfer is between owners of the right to perform servicing who do not perform the servicing and there is no change in the subservicer.

## Short Sales

B.    Failing to send consumers written confirmation within five business days of receipt of a short sale application.  If the short sale application is incomplete, Defendant must include in this written confirmation a list of any missing documents required to complete the short sale application; and

C.      Failing to complete an evaluation of the short sale application and communicate a decision to the consumer prior to the date of a foreclosure sale (provided that Defendant receives the completed short sale application more than 14 days before the foreclosure sale) or within thirty (30) days after receipt of a complete short sale application, whichever is earlier, except that Defendant may have an additional fifteen (15) days to communicate its decision to the borrower when waiting to receive required information from third parties, provided Defendant promptly updates the borrower with the reason for this delay in writing.

**Other Loss Mitigation Requirements**

D.      Failing, within ninety (90) days after entry of this Order, to make Defendant's loss mitigation application available to consumers at no cost by, at a minimum, making it publicly available and readily accessible on Defendant's website and providing it upon request to consumers.  The application shall identify all required documentation and information necessary to complete a loss mitigation application;

E.      Failing, within ninety (90) days after the date of entry of this Order, to maintain sufficient personnel that are adequately trained to handle loss mitigation requests in a timely and legal manner;

F.      Failing, within ninety (90) days after the date of entry of this Order, to implement and maintain a centralized document management system for tracking and storing incoming loss mitigation documents, including those submitted by consumers,

staffed with sufficient personnel that are adequately trained to prevent significant backlogs and lost documents;

     G.     Failing, within ninety (90) days after the date of entry of this Order, to implement and maintain an online portal linked to Defendant's primary servicing system where consumers can check, at no cost, the status of their loss mitigation requests.  The portal must, among other things:

     1.     Enable consumers to submit documents electronically;

     2.     Provide an electronic receipt for any documents submitted; and

     3.     Update the status of pending loss mitigation requests at least every 10 business days;

     H.     Failing, within ninety (90) days after the date of entry of this Order, to take reasonable steps to ensure that personnel assigned to consumers pursuant to the Bureau's rules relating to continuity of contact (12 C.F.R. § 1024.40):

     1.     Refer and transfer consumers to a loss mitigation or other appropriate supervisor upon request;

     2.     Have access to individuals able to stop foreclosure proceedings when necessary to comply with this Order and other applicable requirements; and

     3.     Are not subject to compensation arrangements that encourage collection over loss mitigation activity.

***Provided that***, in the event of a conflict between this Section VII and the requirements of federal, state, or local laws or the standard provisions imposed on servicers by the Department of Treasury, Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Administration, the Department of Veterans Affairs, the Rural Housing Administration, and any other similar organization that may come into existence after the entry of this Order such that Defendant cannot comply with this Section VII without violating these requirements, Defendant shall document such conflicts and notify the Commission and the Bureau that it intends to comply with the requirements to the extent necessary to eliminate the conflict.

***Provided further that***, in the event of an involuntary transfer to Defendant which results in a delay of the transferor's transfer of relevant information and prevents Defendant from being able to comply with the time limits in Section VII.A, Defendant shall submit a written plan to the Bureau and the Commission, within ten (10) days after the date of the transfer, identifying the cause of the delay and setting forth the specific steps it is taking, the resources it is devoting, and Defendant's expected timeline for complying with the requirements of Section VII.A.  If such plan is not objected to by the Bureau or the Commission within ten (10) days of submission of the plan, Defendant must proceed to implement the plan.  If the Bureau or the Commission objects to the plan within ten (10) days of submission, Defendant will make reasonable efforts to amend the plan to address any objection.  In no event shall Defendants fail to honor loss mitigation

agreements entered into by the prior servicer, fail to continue processing pending loss

mitigation requests received in the transfer, or take more than 60 days from the date of

the transfer to satisfy the requirements of Section VII.A.

## VIII.   HOME PRESERVATION REQUIREMENT

**IT IS FURTHER ORDERED** that Defendant shall, no later than sixty (60) days

after the date of entry of this Order, establish and implement a home preservation plan

("Plan") to identify and review Affected Consumers for loss mitigation options, provide

for the solicitation and fast-track evaluation of loss mitigation applications, and stop

pending foreclosure sales for such consumers to the extent necessary to permit the

consumers to be solicited and considered for loss mitigation.  The Plan shall remain in

effect for a period of five (5) years from the Effective Date.  Affected Consumers are

consumers with first- or second-lien residential loans that were transferred to Defendant

between January 1, 2010 and November 2014 and as of the Effective Date (1) are 45 or

more days delinquent or have been referred to foreclosure, but are more than 37 days

before a foreclosure sale, or (2) are serviced by Defendant and become eligible for

referral to foreclosure at any point from the Effective Date until five years from the

Effective Date, provided that Defendant still services the loan at that time.

A.     *Convert In-Process Loan Modifications to Permanent Modifications.*

Defendant shall promptly send a permanent modification agreement to Affected

Consumers with In-Process Loan Modifications that were fully underwritten prior to the

trial period and received all necessary investor approvals but for which the consumer did not previously enter a permanent modification agreement.  Such consumers shall be converted to a permanent modification upon execution of the permanent modification documents, consistent with applicable program and investor guidelines.

      B.     *Solicitation and Fast-Track Evaluation of Loss Mitigation Applications*. For all Affected Consumers not accounted for in Paragraph A above, Defendant must:

      1.     Engage in consumer outreach to obtain complete loss mitigation applications by: (i) Telephone and mail outreach to contact consumers and collect documents; (ii) For incomplete loss mitigation applications, a telephone and mail campaign to notify consumers of the additional documents and information needed to make the loss mitigation application complete; and (iii) Translation services when requested by a consumer or if Defendant has reason to believe that the consumer is not proficient in English.

      2.     Promptly evaluate consumers for all loss mitigation options available under applicable investor guidelines, including by: (i) Providing a dedicated team of underwriters; (ii) Reviewing complete loss mitigation applications within 20 days of receipt; and (iii) Clearly identifying the terms of any loss mitigation offer (such as interest rate, amortization term, and balloon payments) and

identifying the modified principal balance.

C.     *Stop Pending Foreclosures.*  If necessary to permit Defendant to complete

the actions described in Paragraphs A and B above before a foreclosure

sale, Defendant shall take all available measures to postpone any

foreclosure sale scheduled to occur and to prevent the entry of a foreclosure

judgment or the entry of an order for foreclosure sale in connection with a

foreclosure initiated with respect to the loan under consideration for loss

mitigation during the pendency of the actions required in Paragraphs A and

B above.

D.     Defendant may resume foreclosure sales for Affected Consumers under any

of the following conditions:

1.     Despite Defendant's reasonable efforts, including taking all steps

described in Paragraph B, the consumer (i) has not responded to

Defendant's outreach effort within 30 days of Defendant's most

recent attempt to contact the consumer under Section VIII.B, or (ii)

the consumer has responded to Defendant's outreach efforts but has

not provided Defendant with all materials necessary to permit

Defendant to evaluate the consumer for loss mitigation options,

notwithstanding Defendant's attempts to obtain such material

pursuant to Section VIII.B.1.ii, or (iii) does not execute a loss

mitigation offer prior to or at the expiration of the offer;

2.      The consumer states in writing that he or she does not want to be

considered for a loss mitigation option; or

3.      Defendant has evaluated the consumer's complete loss mitigation

application for all available loss mitigation options, and (i)

Defendant has determined the consumer does not qualify for any

loss mitigation option and the time for appeal has expired or the

appeal has been denied, or (ii) the consumer has rejected an offer of

loss mitigation.

E.      The requirements of this subsection VIII shall not apply to any loan (1) for

which Defendant does not own the right to service or sub-service as of the Effective

Date; or (2) that is not subject to foreclosure or collection activity because it has been

charged off.

*Provided that*, in the event of a conflict between this Section VIII and the

requirements of federal, state, or local laws, the standard provisions imposed on servicers

by the Department of Treasury, Fannie Mae, Freddie Mac, Ginnie Mae, the Federal

Housing Administration, the Department of Veterans Affairs, the Rural Housing

Administration, and any other similar organization that may come into existence after the

entry of this Order, the National Mortgage Settlement, or applicable investor guidelines

such that Defendant cannot comply with this Section VIII without violating these

requirements, Defendant shall document such conflicts and notify the Commission and

the Bureau that it intends to comply with these requirements to the extent possible.

*Provided further that*, nothing in this Section VIII shall be interpreted to (1) limit

or restrict in any way the protections provided to borrowers under the Bureau's rules

relating to loss mitigation (12 C.F.R. §§ 1024.41, *et seq.*), or to (2) require Defendant to

communicate with a borrower in a manner otherwise prohibited by applicable law,

including bankruptcy law or the federal Fair Debt Collection Practices Act or any similar

debt-collection-related state law.  To the extent any provision of this Section VIII is in

conflict with any provision of 12 C.F.R. § 1024.41, 12 C.F.R. § 1024.41 shall apply.

## IX.   INJUNCTION AGAINST FALSE OR MISLEADING REPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and

employees, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently

restrained and enjoined from:

A.     Making any material misrepresentation or assisting others in making any

material misrepresentation, expressly or by implication, including but not limited to

misrepresentations:

1.     That consumers' loans have certain unpaid balances, payment due

dates, interest rates, monthly payment amounts, delinquency

statuses, and unpaid fees or other amounts due;

2.      That consumers must make payments under the original, unmodified

loan terms when a consumer has an in-process loan modification or

other loss mitigation agreement from the prior servicer;

3.      That consumers have to make a payment on their loans before

Defendant will consider them for a loan modification;

4.      That Defendant will review and respond to consumers' requests to

be considered for a short sale in a set time period;

5.      The existence and length of any "grace period" in consumers'

promissory notes; and

6.      That a payment method that entails a convenience fee is the only

payment method available or only payment method that consumers

can use to make timely payments.

7.      Nothing in this provision shall be interpreted to preclude Defendant

from accurately representing for informational purposes contractual

amounts that remain due and owing until a permanent loan

modification has been finalized, provided that such representation

does not mislead a consumer regarding the amounts due under the

modification.

B.      Failing, in communications between Defendant and consumers about

Speedpay or other payment methods that involve a convenience fee, to disclose to consumers truthfully, clearly and prominently, and before the consumers agree to pay through Speedpay or any other payment method that entails a convenience fee:

     1.     That consumers will be charged a convenience fee; and

     2.     The existence of other payment methods that do not entail a convenience fee.

## X.     INJUNCTION AGAINST UNAUTHORIZED WITHDRAWALS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from causing payments to be taken from consumers' bank accounts without having previously obtained consumers' consent for any and all such payments.

## XI.     INJUNCTION AGAINST UNLAWFUL COLLECTION PRACTICES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with collecting on past-due debt, are permanently restrained and enjoined from:

     A.     When communicating with any person other than the consumer for the

purpose of acquiring location information about the consumer:

1.  Stating that a consumer owes a debt;

2.  Communicating more than once with any such person unless the person requests that the Defendant communicate with him or her again or Defendant has a reasonable belief that the person's denial of knowledge of the consumer or the consumer's location in response to Defendant's first location communication was erroneous or incomplete and the person now has correct or complete location information;

3.  Failing to create records documenting that any such person informs Defendant, either orally or in writing, that the consumer that Defendant is trying to contact cannot be reached at that telephone number or the person does not have location information about the consumer that Defendant is trying to reach, and failing to maintain these records for at least five years from the date of last contact with the consumer; and

4.  Failing to create records documenting that Defendant had a reasonable belief that a person's statement that the consumer Defendant is trying to contact cannot be reached at that telephone number, or that the person does not have location information about

the consumer, was erroneous, incomplete, or out of date, before

calling that telephone number again, and failing to maintain these

records for at least five years from the date of last contact with the

consumer.   ***Provided that***, for purposes of this Section XI.A, to

have a "reasonable belief" that a person's earlier statements were

erroneous or incomplete and that such person now has correct or

complete location information, Defendant must have: (1) conducted

a thorough review of all applicable records, documents, and database

entries for the consumer Defendant is trying to reach to search for

any notations that indicate that the consumer cannot be reached at

that telephone number or that the person does not have location

information about the consumer Defendant is trying to reach; and (2)

obtained and considered additional information or evidence beyond

the information or evidence previously relied upon by Defendant in

attempting to contact the consumer Defendant is trying to reach, and

such additional information or evidence substantiates Defendant's

belief that the person's earlier statements were erroneous or

incomplete and that such person now has correct or complete

location information;

B.      Communicating, except when seeking to acquire location information in

compliance with Section 804 of the FDCPA, 15 U.S.C. § 1692b, with any person other than the consumer, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, the attorney of the debt collector, the consumer's spouse, the consumer's parent (if the consumer is a minor), the consumer's guardian, the consumer's executor, the consumer's administrator, or the consumer's attorney, in connection with collecting on past-due debt, unless Defendant has the prior consent of the consumer given directly to Defendant or the express permission of a court of competent jurisdiction, or Defendant can show that such communication is reasonably necessary to effectuate a post-judgment judicial remedy;

    C.      With regard to the time and place of communications:

        1.      Communicating with a consumer in connection with collecting on past-due debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  This includes communicating with a consumer before 8 a.m. or after 9 p.m. at the consumer's location, as evidenced by the consumer's zip code and the area code of the consumer's telephone number, unless the Defendant has knowledge that such hours are convenient for the consumer.  This also includes communicating with a consumer at a particular time or place after anyone at the telephone number has informed Defendant, either orally or in writing, that it is

inconvenient for the consumer to receive calls at that particular time or place;

2.       Communicating with the consumer at the consumer's place of employment if the Defendant knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication; and

3.       Failing to create and maintain (for at least five years from the date of last contact with the consumer) records documenting that a consumer has informed Defendant, either orally or in writing, that it is inconvenient for the consumer to receive calls at a particular time or place, or that the consumer is prohibited from receiving calls from Defendant at the consumer's place of employment;

D.       Engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person, including, but not limited to: (1) the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; or (2) causing a telephone to ring, or engaging a person in telephone conversation, repeatedly or continuously with the intent to annoy, abuse, or harass the person at the called number.  ***Provided that***, for purposes of this Section XI.D, there shall exist a rebuttable presumption of an intent to annoy, harass, or abuse if Defendant places more than one call to any person about a debt after that person has notified Defendant in

writing that the person refuses to pay such debt or that the person wishes Defendant to

cease further communication with the person; except that Defendant may communicate to

advise the person that further debt collection efforts are being terminated, that Defendant

may invoke specified remedies which are ordinarily invoked by debt collectors and

creditors, or, where applicable, that Defendant intends to invoke a specified remedy.

*Provided further that*, after a borrower has sent Defendant a notification pursuant to

FDCPA section 805(c) nothing in this Section XI.D shall prevent Defendant from

providing the written notice required by 12 C.F.R. § 1024.39(b) if loss mitigation options

are available. *Provided further that*, when a consumer orally requests that Defendant

cease further communication regarding a debt, Defendant shall (i) provide the consumer

orally and contemporaneously with instructions for submitting the request in writing; and

(ii) within 14 days of the consumer orally requesting that Defendant cease further

communication, provide the consumer clear and conspicuous written instructions on how

to submit the request in writing;

E.      Using any false, deceptive, or misleading representation or means,

including but not limited to falsely representing, directly or indirectly, expressly or by

implication: (1) the character, amount, or legal status of any debt; or (2) that nonpayment

of a debt will result in the arrest or imprisonment of consumers or the seizure,

garnishment, attachment, or sale of the consumers' property or wages, when in fact such

action is not lawful or Defendant does not intend to take such action;

F.      Using any unfair or unconscionable means to collect or attempt to collect any debt, including but not limited to collecting any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and

G.      Violating any provision of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (a copy of which is attached hereto as Attachment A), including, but not limited to: (1) Sections 804(2)-(3), 15 U.S.C. §§ 1692b(2)-(3); (2) Section 805(a), 15 U.S.C. § 1692c(a); (3) Section 805(b), 15 U.S.C. § 1692c(b); (4) Section 806, 15 U.S.C. § 1692d; (5) Section 807, 15 U.S.C. § 1692e; and (6) Section 808, 15 U.S.C. § 1692f.

## XII.   INJUNCTION AGAINST UNLAWFUL CONSUMER REPORTING PRACTICES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      Furnishing information relating to any consumer to a consumer reporting agency, notwithstanding any alternative compliance methods that may be generally available under Section 623(a)(1)(C) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(C), if:

1.      Defendant knows or has reasonable cause to believe that the information is inaccurate; or

2.      Defendant has been notified by the consumer, at the address specified by Defendant for such notices, that specific information is inaccurate, and the information is, in fact, inaccurate;

B.      Upon determining that the information Defendant furnished to a consumer reporting agency about a consumer is not complete and accurate:

1.      Failing to promptly notify the consumer reporting agency that Defendant has determined the information is not complete and accurate;

2.      Failing to provide to the consumer reporting agency any corrections to that information, or any additional information, that is necessary to make the information provided by the Defendant to the agency complete and accurate; and

3.      Furnishing to the agency thereafter any of the information that remains incomplete or inaccurate;

C.      If the completeness or accuracy of any information about a consumer furnished by Defendant to any consumer reporting agency is disputed to Defendant by a consumer or Defendant is notified by a consumer reporting agency under 15 U.S.C. § 1681i(a)(2) that a consumer has disputed information furnished by Defendant, furnishing the information to any consumer reporting agency without notice that such information is disputed by the consumer; and

Page 48 of 65

D.      Violating any provision of the Fair Credit Reporting Act, 15 U.S.C.

§§ 1681-1681x (a copy of which is attached hereto as Attachment B), including, but not

limited to: (1) Section 623(a)(1), 15 U.S.C. § 1681s-2(a)(1); (2) Section 623(a)(2), 15

U.S.C. § 1681s-2(a)(2); and (3) Section 623(a)(3), 15 U.S.C. § 1681s-2(a)(3), in

connection with furnishing information about a consumer to a consumer reporting

agency.

## XIII.   INJUNCTION AGAINST UNLAWFUL REAL ESTATE SETTLEMENT PROCEDURES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and

employees, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection

with the servicing of any loan, are permanently restrained and enjoined from:

A.      Failing to timely acknowledge receipt of, and respond to, consumers'

qualified written requests;

B.      Failing to protect any consumer's credit rating by providing adverse

information to a consumer reporting agency regarding any payment that is the subject of

a notice of error or qualified written request for sixty (60) days after receipt of the

qualified written request;

C.      Failing to make timely payments from consumers' escrow accounts for

casualty insurance, property taxes, and other charges with respect to the property, when

the loan is escrowed for such amounts; and

D.     Violating the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 (a

copy of which is attached hereto as Attachment C), or its implementing Regulation X, 12

C.F.R. §§ 1024.35 and 1024.17(k) (a copy of which is attached hereto as Attachment D).

## XIV.   COMPLIANCE WITH EXISTING LAW

**IT IS FURTHER ORDERED** that nothing in this Order affects Defendant's

obligation to comply with applicable law, implementing regulations, including but not

limited to all applicable provisions of the FDCPA, FCRA, provisions of the accuracy and

integrity requirements of the Furnisher Rule, 12 C.F.R. § 1022.42 and Appendix A,

RESPA, and the Bureau's rules relating to mortgage servicing (12 C.F.R. § 1024.30, *et

seq.*).

## XV.   CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, and

employees, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently

restrained and enjoined from failing to provide sufficient consumer information to enable

the Bureau to efficiently administer consumer redress.  If a representative of the Bureau

requests in writing any information related to redress, Defendant must provide it, in the

form prescribed by the Bureau, within 21 days.

## XVI.   NOTICE REQUIREMENTS

**IT IS FURTHER ORDERED** that:

A.    For a period of 5 years from the date of entry of this Order, Defendant, whether acting directly or indirectly, shall on a quarterly basis make the following disclosure in writing indicating clearly and conspicuously  to consumers with past-due debts serviced by Defendant:

> Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly.
>
> If you have a complaint about the way we are collecting this debt, please write to our CONTACT CENTER, [current physical address], email us at [current email address], or call us toll-free at [current phone number] between 9:00 A.M. and 5:00 P.M. Central Time Monday - Friday.
>
> The Federal Trade Commission and the Consumer Financial Protection Bureau enforce the Fair Debt Collection Practices Act.  If you have a complaint about the way we are collecting your debt, please contact the FTC or the CFPB.  You can reach the FTC online at www.ftc.gov/complaint; by phone at 1-877- FTC-HELP; or by mail at 600 Pennsylvania Ave., NW, Washington, DC 20580.  You can reach the CFPB online at www.consumerfinance.gov/complaint; by phone at 1-855-411-2372; or by mail at Consumer Financial Protection Bureau P.O. Box 4503, Iowa City, Iowa 52244.

The above disclosure shall be given in the language(s) that appear in such communications sent to consumers.  Defendant shall be responsible for sending the initial, quarterly written notice in accordance with the requirement in this Section XVI.A

thirty (30) days after entry of this Order, or, for loans acquired after entry of this Order, within thirty (30) days of acquisition.

B.     Defendant shall be deemed to have complied with the notice requirement of Section XVI.A of this Order if Defendant provides a notice in a specific federal, state, county, or city jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the notice required in Section XVI.A, above.

C.     Defendant, whether acting directly or indirectly, shall provide a written (electronic or paper) copy of the following notice to all officers, agents, and employees having responsibility with respect to collecting on past-due debts, within thirty (30) days of the date of entry of this Order, and to each employee hired for a period of five (5) years after that date, no later than the time the employee assumes responsibility with respect to the collecting on past-due debts, and shall secure from each such person, within forty-five (45) days of delivery, a signed and dated statement acknowledging that he or she has read the notice.

> Debt collectors must comply with the federal Fair Debt
> Collection Practices Act, which limits our activities in trying
> to collect money from consumers.
>
> Section 804 of the Act says that, when contacting someone to
> acquire location information about the consumer, you may
> not state that the consumer owes a debt.  You also may not
> contact this person more than once unless the person asks you
> to or unless you reasonably believe the person's earlier

Page 52 of 65

response was wrong or incomplete and that the person now has correct or complete location information to provide to you.

Section 805 of the Act says that, in connection with collecting on past-due debts, you may not communicate with any person other than the consumer for a purpose other than to obtain location information about the consumer. This means that you may not reveal the existence of a debt to anyone other than: (1) the person who allegedly owes the debt; (2) the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator; or (3) the consumer's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or Green Tree's attorneys.

Section 805 of the Act also says that you may not communicate with a consumer in connection with collecting on past-due debts: (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer; or (2) at the consumer's place of employment if you know or have reason to know that the employer prohibits the consumer from receiving such communication.

If a consumer notifies you either orally or in writing that the consumer refuses to pay a debt or that the consumer wishes us to cease further communication with the consumer, you shall not communicate further with the consumer with respect to such debt, except: (1) to advise the consumer that our further efforts are being terminated; (2) to notify the consumer that we or the owner of the loan may invoke specified remedies which are ordinarily invoked by debt collectors or creditors; (3) where applicable, to notify the consumer that we or the owner of the loan intends to invoke a specified remedy; or (4) to place one additional call to confirm that the consumer is not interested in loss mitigation.

Section 806 of the Act states that you may not harass, oppress, or abuse any person in connection with collecting on

past-due debts.  Among other things, this includes calling someone repeatedly or continuously to annoy, abuse, or harass the person, and using obscene or profane language, or language that is likely to abuse the person.

Section 807 of the Act prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information about a consumer.

Individual debt collectors are liable for their violations of the Act, and may be required to pay penalties if they violate it.

***Provided that***, for purposes of compliance with Section XVI.C of this Order, the signature required for the employee's statement that he or she has read the notice may be in the form of an electronic signature.

## XVII. ACKNOWLEDGMENTS OF ORDER AND RELEVANT STATUTES

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order and of the FDCPA, the FCRA, and RESPA, in their current codification or as they may hereafter be amended:

A.      Defendant, within seven (7) days of entry of this Order, must submit to the Commission and the Bureau an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For five (5) years after entry of this Order, Defendant must deliver a copy of this Order and the FDCPA (attached hereto as Attachment A) to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and

representatives who participate in collecting on past-due debts; and (3) any business entity resulting from any change in structure as set forth in the Section XVIII of this Order.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities. In addition, if the FDCPA is amended within five (5) years after entry of this Order, Defendant must deliver an amended copy of the FDCPA to current personnel who participate in collecting on past-due debts within thirty (30) days after it is amended.

C.      For five (5) years after entry of this Order, Defendant, must deliver a copy of this Order and the FCRA (attached hereto as Attachment B) to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in furnishing or reporting information relating to any consumer to any consumer reporting agency; and (3) any business entity resulting from any change in structure as set forth in the Section XVIII of this Order.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.  In addition, if the FCRA is amended within five (5) years after entry of this Order, Defendant must deliver an amended copy of the FCRA to current personnel who participate in furnishing or reporting information relating to consumers to any consumer reporting agency within thirty (30) days after it is amended.

D.      For five (5) years after entry of this Order, Defendant, must deliver a copy

of this Order and RESPA (attached hereto as Attachment C) to:  (1) all principals,

officers, directors, and LLC managers and members; (2) all employees, agents, and

representatives who participate in paying property taxes, receiving or responding to

notices of error or qualified written requests, or furnishing or reporting information

relating to any consumer to any consumer reporting agency; and (3) any business entity

resulting from any change in structure as set forth in the Section XVIII of this Order.

Delivery must occur within seven (7) days of entry of this Order for current personnel.

To all others, delivery must occur before they assume their responsibilities.  In addition,

if RESPA is amended within five (5) years after entry of this Order, Defendant must

deliver an amended copy of RESPA to current personnel who participate in paying

property taxes, receiving or responding to notices of error or qualified written requests, or

furnishing or reporting information relating to any consumer reporting agency within

thirty (30) days after it is amended.

  E. From each individual or entity to which Defendant delivered a copy of this

Order, Defendant must obtain, within thirty (30) days, a signed and dated

acknowledgment of receipt of this Order and of any additional materials received

pursuant to this Section of the Order, including copies of the FDCPA, FCRA, or RESPA.

## XVIII.  COMPLIANCE REPORTING

  **IT IS FURTHER ORDERED** that Defendant make timely submissions to the

Commission:

A.      One (1) year after entry of this Order, Defendant must submit a compliance report to the Commission, sworn under penalty of perjury:

1.      Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Bureau may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For fifteen (15) years following entry of this Order, Defendant must submit a compliance notice to the Commission, sworn under penalty of perjury, within 14 days of any change in the following: (1) any designated point of contact; or (2) the structure of Defendant or any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or

affiliate that engages in any acts or practices subject to this Order.  The Commission will provide a copy of such notice to the Bureau.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within fourteen (14) days of its filing.  The Commission will provide a copy of such notice to the Bureau.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin: *Federal Trade Commission and Consumer Financial Protection Bureau v. Green Tree Servicing LLC,* No. XXXX.

F.      Unless otherwise directed by a Bureau representative in writing, all submissions to the Bureau pursuant to this Order must be emailed to

Compliance@cfpb.gov or sent by the U.S. Postal Service to: Assistant Director for

Enforcement, Consumer Financial Protection Bureau, ATTENTION: Office of

Enforcement 1700 G Street, NW, Washington D.C. 20552. For overnight courier send

to: Assistant Director for Enforcement, Consumer Financial Protection Bureau,

ATTENTION: Office of Enforcement 1625 I Street, 4th Floor, NW, Washington, D.C.

20006. The subject line must begin: *In re* Green Tree Servicing, LLC, File No. XXXX

2014-CFPB-Docket # XXXX.

## XIX.  RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create certain records for

fifteen (15) years after entry of the Order, and retain each such record for 5 years, unless

otherwise indicated.  Specifically, Defendant must create and retain the following

records:

A.      Accounting records maintained in accordance with generally accepted

accounting principles in effect from time to time in the United States of America,

including records showing the revenues from all goods or services sold, all costs incurred

in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as

an employee or otherwise, that person's:  name, addresses, and telephone numbers; job

title or position; dates of service; and, if applicable, the reason for termination;

C.      Consumer files containing the names, last known addresses and phone

numbers as of the date Defendant ceased servicing activity, dollar amounts of debt owed, when Defendant serviced the loan, records of Defendant's collection activity, and amounts collected by Defendant;

D.     For every consumer complaint to Defendant, whether received directly, indirectly, or through a third party, records that include:

1.     Any complaint and the date received, and the nature of the complaint as reflected in any notes, logs, or memoranda, including a description of the conduct alleged; and

2.     The basis of the complaint, including the names of any collectors, customer service representatives, or supervisors complained about; the nature of any research conducted concerning the validity of any complaint; all documents relating to the disposition of the complaint, including records of all contacts with the consumer; Defendant's response to the complaint and the response date; whether the complaint was resolved; the date of resolution; and any action taken to correct the conduct complained about.

E.     Copies of all scripts and other training materials related to the collection of debts;

F.     To the extent permitted by state law, tape recordings of the complete telephone conversation for at least ninety (90) percent of all telephone calls between

Defendant and anyone it contacts in collecting on past-due debts, provided that

Defendant must commence making such recordings no later than three (3) months after

the date of this Order and must maintain these recordings for two (2) years after they are

made;

G.     To the extent permitted by state law, tape recordings of the complete

telephone conversation for at least ninety (90) percent of all calls in which consumers

consent to payment using Speedpay or any other payment method initiated by Defendant

in which a convenience fee is charged, provided that Defendant must commence making

such recordings no later than three (3) months after the date of this Order and must

maintain these recordings for two (2) years after they are made; and

H.     All records and documents necessary to demonstrate full compliance with

each provision of this Order, including procedures for responding to consumer

complaints, documents related to investigations of consumer complaints, all required

acknowledgments, notices, and all submissions to the Commission or Bureau.

## XX.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant's

compliance with this Order:

A.     Within fourteen (14) days of receipt of a written request from a

representative of the Commission or Bureau, Defendant must: submit additional

compliance reports or other requested information, which must be sworn under penalty of

perjury; appear for depositions; and produce documents, for inspection and copying.  The

Commission and Bureau are also authorized to obtain discovery, without further leave of

court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30

(including telephonic depositions), 31, 33, 34, 36, 45, and 69, ***provided that***, Defendant,

after attempting to resolve a dispute without court action and for good cause shown, may

file a motion with this Court seeking an order for one or more of the protections set forth

in Federal Rule of Civil Procedure Rule 26(c).

B.     For matters concerning this Order, the Commission and Bureau are

authorized to communicate directly with Defendant.  Defendant must permit

representatives of the Commission or Bureau to interview any employee or other person

affiliated with Defendant who has agreed to such an interview.  The person interviewed

may have counsel present.

C.     The Commission and Bureau may use all other lawful means, including

posing, through their respective representatives, as consumers, suppliers, or other

individuals or entities, to Defendant or any individual or entity affiliated with Defendant,

without the necessity of identification or prior notice.  Nothing in this Order limits the

Commission's or Bureau's lawful use of compulsory process, pursuant to Sections 9 and

20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, or Section 1052 of the CFPA, 12 U.S.C. §

5562.

***Provided that***, consistent with the Memorandum of Understanding between the Commission and the Bureau, Plaintiffs shall endeavor to coordinate enforcement of their rights under this Order to minimize duplication of efforts and burden on Defendant.

## XXI.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that although this action will be dismissed, this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this 23<u>rd</u>  day of <u>April</u>, 2015.

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Court Judge

**FOR PLAINTIFFS:**

LISA ROTHFARB
Maryland Bar
DANIEL DWYER
California Bar No.286701
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2602
Fax: (202) 326-3768

Date: 4/21/2015

JAMES SUGARMAN
Washington Bar No. 39107
KIRSTEN IVEY-COLSON
Washington, DC Bar No. 470102
Consumer Financial Protection Bureau
1700 G Street NW
Washington. DC 20552
Tel: (202) 435-7493
Fax: (202) 435-7722

Page 64 of 65

**FOR DEFENDANT GREEN TREE SERVICING LLC**


THOMAS J. FRANCO
President
Green Tree Servicing LLC
345 St. Peter Street
St. Paul, MN 55102

Date: 2/20/15


STEVEN M. KAPLAN
Washington, DC Bar No. 447308
K&L Gates LLP
1601 K Street NW
Washington, DC 20006-1600
Tel: (202) 778-9204


Date: _____

ELIZABETH L. MCKEEN
California Bar No. 216690
O'Melveny & Myers LLP
610 Newport Center Dr., Ste 1700
Newport Beach, CA 92660
Tel: (949) 823-7150


Date: _____

**FOR DEFENDANT GREEN TREE SERVICING LLC**

_____

THOMAS J. FRANCO
President
Green Tree Servicing LLC
345 St. Peter Street
St. Paul, MN 55102

Date: _____

_____                    _____
STEVEN M. KAPLAN                                    ELIZABETH L. MCKEEN
Washington, DC Bar No. 447308                       California Bar No. 216690
K&L Gates LLP                                       O'Melveny & Myers LLP
1601 K Street NW                                    610 Newport Center Dr., Ste 1700
Washington, DC 20006-1600                           Newport Beach, CA 92660
Tel: (202) 778-9204                                 Tel: (949) 823-7150

Date: _2/20/15_____                               Date: _____

Page 65 of 65

**FOR DEFENDANT GREEN TREE SERVICING LLC**

_____

THOMAS J. FRANCO
President
Green Tree Servicing LLC
345 St. Peter Street
St. Paul, MN 55102

Date: _____

_____

STEVEN M. KAPLAN
Washington, DC Bar No. 447308
K&L Gates LLP
1601 K Street NW
Washington, DC 20006-1600
Tel: (202) 778-9204

Date: _____

ELIZABETH L. MCKEEN
California Bar No. 216690
O'Melveny & Myers LLP
610 Newport Center Dr., Ste 1700
Newport Beach, CA 92660
Tel: (949) 823-7150

Date: _2/20/15_