# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Federal Trade Commission and Consumer Financial Protection Bureau, | Case No. 15-cv-2064 (SRN/SER) |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| Green Tree Servicing LLC, | |
| Defendant. | |

STEVEN E. RAU, United States Magistrate Judge

The above captioned case is before the Court on Roy J. Dixon's ("Dixon") Verified Emergency Motion for Civil Contempt and Injunction Relief ("Motion") [Doc. No. 6]. This matter was referred to the undersigned pursuant 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1(a)(3)(A) for a Report and Recommendation. *See* (Order of Referral) [Doc. No. 8]. For the reasons set forth below, this Court recommends that Dixon's Motion be denied because he has no standing to enforce the Stipulated Order for Permanent Injunction and Monetary Judgment ("Consent Order") [Doc. No. 5].

## I.    BACKGROUND

Plaintiffs Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau (collectively, "Plaintiffs"), filed a lawsuit against Green Tree Servicing LLC ("Green Tree")

> under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, to obtain permanent injunctive relief, restitution, disgorgement, and other equitable relief for violations of the FDCPA, Section 5 of the FTC Act, and the FCRA.

(Compl.) [Doc. No. 1 ¶ 1]. Soon thereafter, the parties entered into a stipulated consent order.

*See* (Consent Order). Green Tree was ordered to pay Plaintiffs $48,000,000 to establish a redress fund (the "Fund"), that Plaintiffs managed. (*Id.* § I). In particular, it was Plaintiffs' responsibility to redress Green Tree's consumers on the basis of the alleged violations. *See* (*id.* § I.C).

Furthermore, the Consent Order established an oversight regime whereby Plaintiffs would oversee Green Tree's compliance with the Consent Order. For example, Green Tree must: (1) submit compliance reports to Plaintiffs, (2) respond to requests for additional information by Plaintiff regarding compliance reports and compliance in general; and (3) comply with Plaintiffs' subsequent discovery requests without court intervention. *See, e.g.*, (*id.* §§ XV, XVIII, XX). Plaintiffs "have overseen Green Tree's compliance with the Consent Order since it was entered in April 2015, and there were no fillings or other activity before this Court until Dixon filed his *pro se* motion on May 5, 2017." (Green Tree Servicing LLC's Resp. to *Pro Se* Non-Party Claimant Roy Dixon's "Verified Emergency Mot. for Civil Contempt & Inj. Relief," "Green Tree's Resp.") [Doc. No. 12 at 3].

In Dixon's Motion, he requests that the Court order Green Tree to show cause that it did not violate the Consent Order with respect to the handling of Dixon's mortgage and foreclosure of his property in Florida. *See* (Mot. at 1, 3–5).[1] In addition to an order to show cause, Dixon also requests that the Court stay the sale of his Florida property and enjoin Green Tree "from taking any further action against [his] property." *See* (*id.* at 5).

This Court ordered the parties to respond to Dixon's Motion. *See* (Text Only Order Dated Aug. 31, 2017) [Doc. No. 9]. Each of the parties to the Consent Order provided an individual Response. *See* (Pl. Federal Trade Commission's Resp. to Roy Dixon's Mot. for Civil Contempt & Inj. Relief, "FTC's Resp.") [Doc. No. 11]; (Green Tree's Resp.). The FTC asserts that Green Tree "does not appear to have violated Section V or Section VIII [of the Consent Order], but the

---

[1] When referencing Dixon's Motion, CM/ECF pagination is used.

FTC needs more information [from Green Tree] to address the potential violations of Section IV and IX." *See* (FTC's Resp. at 3); *see also* (*id.* 3–7) (FTC's arguments directed thereto).

Green Tree asserts that Dixon's Motion should be denied because he lacks standing to enforce the Consent Order. (Green Tree's Resp. at 1–2, 9–13). Specifically, Green Tree asserts that "nothing in the Consent Order authorizes Dixon (or any other non-party) to enforce its provisions." (*Id.* at 12), Specifically, Green Tree argues that because Dixon is a non-party to the Consent Order, for him to have standing he must demonstrate that the Consent Order "intended to give [him] a legally binding and enforceable right to [benefits under the Consent Order]," which he has failed to do. (*Id.* at 11) (internal quotation marks omitted) (first alteration in original). Green Tree also asserts the terms of the Consent Order preclude third party enforcement. *See* (*id.*). In particular, sections I–III, VI, VIII, XV, XVIII, and XX of the Consent Order allegedly support Green Tree's position that only Plaintiffs had enforcement rights and that consumers did not retain any individual rights to assert claims against the Fund. (*Id.*). Alternatively, Green Tree asserts that Dixon's claims are foreclosed on the basis of *res judicata* and collateral estoppel because the harms alleged by Dixon have been adjudicated to his detriment in both federal and state courts. *See* (Green Tree's Resp. at 2, 13–21).[2]

Dixon filed a Reply to these Reponses. (Third-Party Claimant Roy J. Dixon's Reply with Suppl. Evidence Exs. in Supp., "Dixon's Reply") [Doc. No. 17]. Most of Dixon's Reply deals with the Florida federal and state court decisions and Green Tree's alleged wrong-doing. *See generally* (Dixon's Reply). Dixon provides no rebuttals regarding Green Tree's standing argument. *See* (Dixon's Reply at 10–11).[3] With respect to Green Tree's *res judicata* and collateral estoppel arguments, Dixon's position is difficult to decipher, but apparently he believes

---

[2]   Because this Court concludes that Dixon lacks standing, it does not address Green Tree's argument related to issues of *res judicata* and collateral estoppel.
[3]   When referencing Dixon's Reply, CM/ECF pagination is used.

3

that the Florida state court decisions does not have preclusive effect because the court lacked subject matter jurisdiction. *See* (*id.* at 10) Specifically, it is Dixon's position that the Florida state court lacked subject matter jurisdiction because Green Tree merged with another entity in August 2015 and Green Tree was never substituted in the state court action. *See* (*id.*); *see also* (FTC's Resp. at 2) (mentioning the Green Tree merger).

## II.   DISCUSSION

Regardless of the procedural irregularities implicated by the manner in which Dixon filed his Motion, this Court lacks jurisdiction to entertain Dixon's requests for relief because he lacks standing. *Cf.* (Green Tree's Resp. at 7) (suggesting that Dixon's Motion be denied because he did not timely file a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure and because he did not properly serve his Motion). In other words, even if Dixon had properly brought a motion to intervene under the Federal Rules of Civil Procedure, the Court could not entertain it because Dixon has no standing to effectuate the relief that he seeks. As a result, this Court recommends Dixon's Motion be denied. Because Dixon's Motion fails on the threshold issue of standing, this Court does not address Green Tree's other arguments related to the Rule 24 of the Federal Rules of Civil Procedure, *res judicata*, or collateral estoppel.

### A.   Legal Standard

A "party invoking federal jurisdiction bears the burden of establishing" that it has standing under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate Article III standing, Dixon must establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

**B.     Analysis**

At issue here is whether the Consent Order establishes that an alleged violation to a third party constitutes an injury in fact under the Consent Order. For Dixon to establish an injury in fact, he must demonstrate that he suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted).

Here, Dixon has not suffered an invasion of a legally protected right under the Consent Order. For a third party to have a legally protected right, "the third party must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit." *Pure County, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002). Dixon cannot make this requisite showing.

Dixon does not identify any portion of the Consent Order that would suggest an intention to give a third party "a legally binding and enforceable right." *See id*; *see also* (Mot.) (alleging no facts that suggest that the Consent Order intended to confer him an enforceable right); (Dixon's Reply) (same). Dixon's failure to allege specific facts in this regard precludes him from establishing standing under the Consent Order. *See, e.g.*, *Lucke v. Wells Fargo, N.A.*, No. 13-cv-2193 (MJD/TNL), 2014 WL 12601035, at *3 (D. Minn. Apr. 2, 2014) (Leung, Mag. J.) (recommending dismissal because plaintiff in that action failed to demonstrate facts establishing he was a third-party beneficiary under the consent decree and thus had no standing).

Furthermore, an independent analysis of the Consent Order shows that third parties were not given an enforceable right under the Consent Order. First, to the extent that the Consent Order established the Fund for the benefit of third parties, the Consent Order does not expressly

5

provide a "legally binding and enforceable right" to the Fund; there is no mechanism for third parties to assert independent claims against the Fund and management of the Fund was left to Plaintiffs' discretion. *See generally* (Consent Order §§ I–III). In particular, the Consent Order specified that Plaintiffs would manage the Fund and would effectuate "consumer redress, including but not limited to refund of moneys, restitution, or other monetary relief." (*Id.* § I.C); *see also* (*id.* § I.D) (stating Plaintiffs retained discretion not to redress consumers when redress is "impracticable or otherwise inappropriate"). To the extent that third-parties wanted to assert claims against Green Tree for allegations substantially similar to those under which Plaintiffs filed their lawsuit here, the Consent Order contemplated that third-parties would vindicate those rights in related consumer actions and not through interventions arising under the Consent Order. *See, e.g.*, (*id.* §§ I.E, II.E); *see also* (*id.* at 7) (defining a related consumer action as "a private action by or on behalf of one or more consumers, or enforcement action by another governmental agency, entity, or representative, brought against Defendant based on substantially the same conduct or issues as alleged in the Complaint").

Second, the remaining aspects of the oversight regime make no mention of third-party participation. *See, e.g.*, (*id.* § XV) (ordering that if Plaintiffs "request[] in writing any information related to redress, [Green Tree] must provide it, in the form prescribed by the [Plaintiffs], within 21 days."); (*id.* § XVIII) (requiring that Green Tree "make timely submissions" to the Plaintiffs regarding compliance with the Consent Order); (*id.* § XX) (ordering Green Tree to respond to requests for additional compliance reports within fourteen days of a written request and that under most circumstances Plaintiffs "are also authorized to obtain discovery, without further leave of court").

Because Dixon has no legally protected interest under the Consent Order, he cannot show

6

an injury in fact. Where a plaintiff has failed to establish an injury in fact, the Court need not consider the remaining elements of standing. *See Spokeo* 135 S. Ct. at 1547–48. In other words, where a third party cannot establish an injury in fact, it is well-settled that the third party "do[es] not have standing to enforce a consent decree." *Pure County, Inc.*, 312 F.3d at 958. Consequently, Dixon cannot demonstrate that he has Article III standing, and the Court lacks jurisdiction to address Dixon's Motion. *See Spokeo* 135 S. Ct. at 1547–48; *Lujan*, 504 U.S. at 561. This Court must recommend that Dixon's Motion be denied.

## III.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Roy J. Dixon's Verified Emergency Motion for Civil Contempt and Injunction Relief [Doc. No. 6] be **DENIED**.

Dated: January 8, 2018

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).